·388 A.2d 1094

Norman F. WEAVER and Rebecca M. Weaver, Administrators of the Estate of Norman A. Weaver, Deceased, and the Estate of Norman A. Weaver, Appellants,

v.

Bernard J. and Betty J. CLABAUGH, Administrators of the Estate of Gerald F. Clabaugh, Deceased, and Gloria N. Snyder, Executrix of the Estate of Dennis A. Snyder, Deceased, and National Cash Register Company, Inc.

Superior Court of Pennsylvania.

Argued March 16, 1977.

Decided July 12, 1978.

Henry O. Heiser, III, Gettysburg, for appellants.

Christian S. Erb, Jr., Harrisburg, with him Metzger, Wickersham, Knauss & Erb, Harrisburg, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

This case arises out of an automobile accident which occurred approximately two miles west of the Borough of Bonneauville in Adams County. Norman A. Weaver, appellants' decedent, was a passenger in the vehicle driven by Clabaugh which was travelling in a westerly direction. The accident involved a head on collision in the east bound lane of travel with an automobile driven by Dennis A. Snyder. There were no survivors.

Appellants instituted an action against the estates of the deceased drivers and Snyder's employer, National Cash Register, Inc.[1] Trial began on May 27, 1975. At the conclusion of the court's charge, the jury was requested to make seven special findings. After deliberating for three hours, the jury found, in part, that Gerald Clabaugh's negligence was the proximate cause of the accident; however, appellants' decedent, Norman A. Weaver, was found to have assumed the risk of riding in the Clabaugh automobile under the circumstances.[2]

---

1. A second suit was filed by the Clabaugh estate against the Snyder estate and Snyder's employer, National Cash Register Company, who joined the owner of the Grey Goose Inn, a local tavern. Two separate actions were filed by the Snyder estate against the Clabaugh estate and the owner of the Grey Goose Inn. All four suits were consolidated for trial. A non-suit was ultimately granted in favor of the owner of the Grey Goose Inn.

2. The seven findings were as follows:
   1. Do you find that Dennis A. Snyder was negligent? Yes____ No X .
   2. If you find that he was negligent, was his negligence a proximate cause of the accident? Yes____ No X .
   3. Do you find that Dennis A. Snyder was contributorily negligent which was a proximate cause of the accident? Yes____ No X .
   4. Do you find that Gerald F. Clabaugh was negligent? Yes X No____.
   5. If you find that he was negligent, was his negligence a proximate cause of the accident? Yes X No____.

Timely post-trial motions for a judgment n. o. v. and a new trial were filed by appellants. Appellants contended that the lower court erred in submitting the issue of assumption of risk to the jury and that the verdict was against the law, the charge of the court and the weight of the evidence. Post-trial motions were denied and this appeal followed.

Central to all of the appellants' contentions is the argument that there was insufficient evidence to support a finding of assumption of risk. Specifically, they argue that there was no evidence from which it could reasonably be inferred that Weaver was subjectively aware of the fact that Clabaugh was unfit to drive due to intoxication.

After an in camera hearing, the following evidence of intoxication was admitted over objection. Mrs. Susan Kuhn, a barmaid at the Grey Goose Inn, in Bonneauville, testified that Clabaugh and Weaver arrived at the tavern together at noon and remained there until five o'clock, approximately fifteen minutes prior to the accident. Mrs. Kuhn estimated that she served Clabaugh six or more twelve ounce bottles of beer. In her opinion, Clabaugh appeared normal and showed no signs of intoxication.

The Snyder estate then introduced evidence establishing that blood samples obtained from Clabaugh's body at the scene of the accident were tested and contained a .16 percent concentration of alcohol. G. Thomas Passananti, Ph.D., an expert in toxicology, testified that anyone with a .16 percent blood alcohol content is intoxicated and, in his opinion, unfit to operate a motor vehicle. In rebuttal, appellants introduced the testimony of six men who were patrons of the Grey Goose Inn on the afternoon in question. Each man testified that in his opinion Clabaugh was not visibly intoxicated.

> 6. Do you find that Gerald F. Clabaugh was contributorily negligent which was a proximate cause of this accident? Yes_X_ No___.
> 7. Do you find that Norman A. Weaver assumed the risk of riding in the Clabaugh car under the circumstances? Yes_X_ No___.

It is true that a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character. *Watson v. Zanotti Motor Co.,* 219 Pa.Super. 96, 280 A.2d 670 (1971); *Restatement (Second) of Torts,* § 496 D (1965). This means that the plaintiff must have been subjectively aware of the facts which created the danger and he must have appreciated the danger itself and the nature, character and extent which made it unreasonable. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975); *Restatement (Second) of Torts,* § 496 D, comment *b* (1965). As in other cases, however, knowledge may be inferred, without actual proof, from the surrounding circumstances. *Green v. Parisi,* 478 F.2d 313 (3d Cir. 1973); *Schentzel v. Philadelphia National League Club,* 173 Pa.Super. 179, 96 A.2d 181 (1953). Moreover, there are some dangers which are so obvious or well known that all adults of normal intelligence will be charged with their knowledge. *Landy v. Rosenstein,* 325 Pa. 209, 188 A. 855 (1937); *Restatement (Second) of Torts,* § 496 D, comment *d* (1956); *see, e. g., Cummings v. Borough of Nazareth,* 427 Pa. 14, 233 A.2d 874 (1967).

In the instant case, appellants submitted, and the lower court accepted, the following point for charge.

"[A] person who accepts a ride in a vehicle being driven by another person may be chargeable with assumption of risk if he knows, *or in the exercise of reasonable care should know* that the driver is intoxicated. *Cassidy v. Evans,* 343 Pa. 483, 23 A.2d 449 (1942). *The test is whether the circumstances were such as to lead a person of ordinary prudence to believe the operator was intoxicated and unfit to operate a motor vehicle.* In this regard the taking of drinks is not enough since mere consumption, in itself does not prove unfitness to drive. There must [b]e additional evidence to demonstrate that the defendant driver was obviously intoxicated so as to put his guest on notice of this and hence of his unfitness to drive." (NT 314–15) (emphasis added). *Compare* appellants' additional point for charge No. 2.

The court also accepted appellants' request for an instruction that one cannot infer from the results of a blood test alone that a person is *visibly* intoxicated.

■ Although the above quoted passage was styled as a point for charge on assumption of risk it was, at least in part, a statement of the law of contributory negligence. Section 466 of the *Restatement (Second) of Torts* states in part that contributory negligence may be "an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff *knows or has reason to know. . . .*" While there may be cases in which assumption of risk and contributory negligence overlap, it is clear that the objective "reasonable man" standard as contained in appellants' point for charge is not applicable to assumption of risk. *Berkebile v. Brantly Helicopter Corp., supra.*

■ In *Broxie v. Household Finance Co.*, 472 Pa. 373, 372 A.2d 741 (1977), our supreme court held that:

"[A] party who neither specifically objects to a charge on a particular subject nor offers a specific point for charge waives its right to a judgment n. o. v. (or to appellate review of a trial court's denial of a motion for judgment n. o. v.) where the basis of the motion is that the law against which the sufficiency of the evidence is to be measured was not the law as given to the jury." 472 Pa. at 379, 372 A.2d 744.

This rule applies equally to the instant case where appellants by a specific point for charge, provided the court with an inaccurate statement of the law.[3] In reviewing the denial of appellants' motion for judgment n. o. v., we must assume that the lower court's instructions were correct and must

3. The list of special interrogatories given to the jury did not contain any question specifically relating to Weaver's contributory negligence. Perhaps the defendants felt that the issue was adequately covered by the assumption of risk question. We realize that the jury was not informed that reckless conduct on the part of Clabaugh would preclude a finding in favor of his estate unless Weaver was subjectively aware that Clabaugh was unfit to drive; however, the responsibility for this omission rests with the appellants who failed to request a proper instruction.

decide whether the lower court acted properly based on the law as stated to the jury.

"In considering a motion for judgment n. o. v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Metts v. Griglak,* 438 Pa. 392, 395, 264 A.2d 684, 686 (1970). "[A] judgment n. o. v. will be entered only in a clear case and . . . any doubts will be resolved in favor of the verdict." *Stewart v. Chernicky,* 439 Pa. 43, 53, 266 A.2d 259, 265 (1970); *see also Broxie v. Household Finance Co., supra.* Viewing the evidence presented at trial in light of this standard of review, we are satisfied that there was sufficient evidence upon which the jury could conclude that Weaver knew, or should have known, that Clabaugh was unfit to drive due to intoxication.[4]

The order of the lower court is affirmed.

JACOBS, President Judge, filed a concurring opinion.

CERCONE, J., dissents and would grant appellants a new trial with respect to the Clabaugh Estate only.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

JACOBS, President Judge:

I join in the majority's disposition of the instant case.

Admittedly, no testimony was produced at trial that would indicate that Mr. Clabaugh was visibly intoxicated on the afternoon in question. It should be noted, however, that all those testifying as to Mr. Clabaugh's sobriety had them-

4. Appellant also contends that the verdict was contrary to the court's charge because there was no evidence that Clabaugh was *obviously* intoxicated. As used in appellants' request for charge, *supra,* the word obviously meant that the jury must find conclusively that Clabaugh was intoxicated. It did not mean that the jury was required to find that Clabaugh was visibly intoxicated. There was overwhelming evidence that Clabaugh was intoxicated. This contention is without merit.

selves consumed alcoholic beverages that day, a factor the jury could reasonably consider in weighing such testimony. Moreover, the jury could well have considered the definition of intoxication to which at least one of those witnesses subscribed: "intoxicated is when you can't walk right and you're falling all over the place . . ." N.T. at 285.

Many adults *ignore* the constant warnings and pleadings from our law enforcement agencies; few, however, can truthfully state that they are *unaware* of the obvious risk of drinking and driving. When, as here, two individuals pass an afternoon drinking steadily in one another's company, I do not believe that one of them must fall off a bar stool before his companion can be charged with actual knowledge of his friend's unfitness to drive. Clearly, there was sufficient evidence to support a finding of assumption of risk.