**Arthur FIERRO**

v.

**RUESCH CORPORATION, formerly H.J. Ruesch Machine Co.**

**Civ. A. No. 82–3290.**

United States District Court, E.D. Pennsylvania.

May 30, 1985.

---

John J. Speicher, Reading, Pa., for plaintiff.

Richard A. Bausher, Reading, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

In this products liability action, plaintiff, Arthur Fierro, sustained severe and permanent injuries to his left hand, while working with a machine manufactured by Ruesch Corporation, during the course of his employment at Reading Industries. The accident occurred while the plaintiff was cleaning the marking rolls of the Ruesch machine as he had done "countless times" since he first operated the Ruesch in 1964. (N.T. of 9/26/84 at 59). Plaintiff's task with respect to the Ruesch was to feed coils of pipe into the machine which drew the pipe through four sets of rollers, the last of which imprinted the Reading Industries logo and type of pipe, indicated by a letter designation, upon the finished product. There were two marking rollers, one rotating clockwise, the other counterclockwise, which came close together creating a nip or pinch point. From time to time as the pipe passed through the marking rolls, a "glob" of dirt would appear on the pipe at the point of the logo, indicating to Fierro that dirt or grease had been deposited on the marking rolls. (N.T. of 9/26/84 at 58). When that occurred, plaintiff would clean the marking rolls by holding a rag against the roll which rotated in a clockwise direction. (Id.).

On August 27, 1981, while engaged in that procedure, plaintiff's hand was drawn into the pinch point and crushed. Plaintiff has been unable to work since the accident and continues to experience pain, disfigurement and psychological distress because of it.

The complaint alleged causes of action based on negligence, breach of warranty and strict liability. However, plaintiff pursued only the strict liability claim. Following a seven-day trial, the jury returned a general verdict for the defendant. Plaintiff now requests a new trial, arguing:

1. that the Court improperly refused to charge the jury that the evidence could not support a finding of assumption of the risk;

2. that the Court improperly denied plaintiff's motion to excuse two members of the jury panel for cause;

3. that the Court improperly received testimony which the plaintiff characterizes as irrelevant, prejudicial, misleading and confusing.

We will consider plaintiff's contentions in the order in which they were raised.

### I.  Assumption of the Risk

Although the basis of the jury's decision cannot be known for certain, plaintiff contends that the jury's questions to the Court during its deliberations reflect a preoccupation with assumption of the risk [1] and apparently believes that the verdict for defendant was rendered on that basis.[2]

---

1. After deliberating for approximately one and a half hours, the jury sent the following message to the Court: We need clarification on assumed risk. Does the plaintiff have to be thinking of the risk at the exact time of the accident for it to be considered an assumed risk? (N.T. of 10/4/84 at 73).

     The Court responded, after consultation with counsel, by repeating the assumption of the risk portion of the charge in its entirety.

     Almost immediately upon resuming deliberations the next morning, the jury sent out two additional questions: May we have Art Fierro's testimony read back to us. Those portions where he described the cleaning of the marker rollers to both Mr. Speicher and Mr. Bausher? May we have another review of the law pertaining to assumed risk? (N.T. of 10/5/84 at 2).

     The first question was answered in the negative. Again, after consultation with counsel and having secured their agreement, the assumption of the risk portion of the charge was read to the jury in its entirety.

2. During a discussion in chambers with counsel prior to responding to the jury's first questions, plaintiff's attorney remarked, "Your Honor, I think our concern is not that these points should not be reread, but I think in light of their questions and knowing—certainly anticipating

Hence, plaintiff's argument that it was error to deny plaintiff's proposed point for charge which effectively directed a verdict on that issue.[3]

■ While he now assigns as error this Court's refusal to charge the jury in that manner, plaintiff did not press the point during the trial. In fact, plaintiff submitted five additional points for charge on assumption of the risk, all of which were affirmed and four of which were read verbatim as part of the jury charge. Moreover, to one of defendant's three proposed points on the issue plaintiff had no objection whatsoever, to another he objected only insofar as it was not a complete statement of the law, and as to the third, he objected only to some of the language.[4] (N.T. of 10/4/84 at 62, 63). As modified, defendant's points along with four of those submitted by plaintiff constituted the entire charge with respect of assumption of the risk. No objection by the plaintiff was recorded when the Court ruled on the points, (N.T. of 10/3/84 at 76–79), when the Court asked if there were exceptions to the

charge, (N.T. of 10/4/84 at 68–70), or when the Court twice reread the portion of the charge which dealt with assumption of the risk in response to the jury's questions. (N.T. of 10/4/84 at 80–82 and 10/5/84 at 2–4).

Thus, the record amply supports defendant's contention that the Court's refusal to direct a verdict for plaintiff on this issue was not sufficiently preserved under Fed. R.Civ.P. 51, which reads in pertinent part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the ground of his objection.

However, it is not necessary to, and we do not, base our decision on procedural grounds only. Substantively, it was entirely proper to allow the jury to consider whether plaintiff assumed the risk of his injury on the basis of the evidence adduced and the law pertaining to this affirmative defense.

---

where they are at this stage of their deliberations …". To this comment the Court responded, "I don't know where they are, at what stage of the deliberations. I only know what the question is, which is what you know." (N.T. of 10/4/84 at 78).

3. Plaintiff proposed as his point #12 the following: "In this case the evidence will not support a finding that Plaintiff did, in fact, voluntarily expose himself to a known danger and you may not find for the Defendant on the basis of assumption of the risk".

4. The text of defendant's points before modification was as follows:
1. If you find that the plaintiff, Arthur Fierro, knew that the marking rollers were unguarded and voluntarily proceeded to attempt to clean the marking rollers while they were moving without stopping the machine with knowledge of the danger in doing so, he is barred from recovery. (Citation omitted)
2. If you find that the plaintiff, Arthur Fierro, fully understood a risk of harm to himself in attempting to clean the marking rollers and nevertheless chose to enter or remain within the area of that risk under circumstances that manifest a willingness to accept it, he is not entitled to recover for harm within that risk. (Citations omitted).

3. Evidence that a party assumed a risk may be inferred from surrounding circumstances; there need not be actual proof that he knew, understood or appreciated the risk. (Citations omitted).
As read to the jury as part of the Court's charge, after counsel discussed and agreed upon certain modifications, the points were as follows:
If you find that the plaintiff knew that the marking rollers were unguarded and voluntarily proceeded to attempt to clean the marking rollers while they were moving without stopping the machine with knowledge of the danger in doing so and not as the result of inattention or inadvertence chose to proceed, then he is barred from recovery. If you find that the plaintiff fully understood the risk and (sic) harm to himself in attempting to clean the marking rollers and nevertheless chose to enter or remain within the area of that risk under circumstances that manifest a willingness to accept it, then he is not entitled to recover for harm so occurring.
Evidence that a party assumed a risk may be inferred from surrounding circumstances. There need not be direct proof that he knew, understood or appreciated the risk, and the burden of establishing assumption of the risk, as I have stated, rests upon the defendant. (N.T. of 10/4/84 at 63, 64).

The crux of plaintiff's argument that the issue should not have gone to the jury in this case is that there was no direct and specific testimony that plaintiff was subjectively aware of any risk to himself in proceeding to clean the marking rolls as he did at the time the accident occurred. Plaintiff testified that he always placed his hands as far away from the pinch point as possible when cleaning the marking rolls. (N.T. of 9/26/84 at 69). Although he indicated that he didn't think the procedure was dangerous because he always took the precaution of reaching around the rollers to place the rag as far away from the pinch point as possible, (N.T. of 9/27/84 at 7), he also admitted that he was aware of the possibility of getting his hand caught in the machine. (*Id.*). The thrust of plaintiff's testimony on this issue was that he was aware of the danger, but he didn't think an accident was likely while following his procedure.[5]

■ Assumption of the risk is a jury question unless reasonable people could not differ as to the result. *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002, 1009 (3d Cir.1983). Appellate courts have considered it reversible error when trial courts refused to charge the jury on assumption of the risk where the testimony was very similar to that elicited here. *See, e.g., Green v. Sanitary Scale Co.*, 431 F.2d 371 (3d Cir.1970); *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). On the other hand, an instruction on assumption of the risk has been approved even though there was only circumstantial evidence that the plaintiff knew of and appreciated the risk of his actions because as the Court observed, "[D]irect proof of it is exceedingly difficult. Evidence that a party assumed a risk may, however, be inferred from surrounding circumstances; there need not be actual proof that he knew, understood or

appreciated the risk". *Green v. Parisi*, 478 F.2d 313, 315 (3d Cir.1978).

■ Here the circumstances were such that the jury might have found that the plaintiff assumed the risk of his injuries. The testimony as to plaintiff's state of mind at the time of the accident was no more certain in this case than in others where a jury issue was presented. For example, in *Carrender, supra.*, the plaintiff also acknowledged the possibility of accident but didn't think it likely. In fact, she testified that when she placed herself in the dangerous position which ultimately led to her injuries, she "hadn't given it (the possibility of falling) a thought". 469 A.2d 122, n. 3. Although it was not a strict liability case and the duty of care owed to plaintiff by defendant could have been negated in that context (landowner/invitee) even if the plaintiff had not testified to her subjective awareness of an icy condition that caused her accident, the court noted that her testimony demonstrated that she was aware of and appreciated the risk of falling although she clearly was not thinking of the danger at the moment of the accident.

Finally, we observe in passing that plaintiff's counsel implicitly recognized in several comments on the record that the assumption of the risk issue was not so free from doubt as to warrant taking it from the jury. For instance, in response to the Court's explanation of the purpose and meaning of affirming or denying points for charge, one of plaintiff's attorneys commented,

> Well, under that system then, Judge, I think we would certainly understand that we are not going to make an argument to the jury that if they find that the product was defective, that the defendant is liable for all harm caused by that defective condition and that they should find that *even if they find that the*

---

**5.** Although plaintiff contended in his brief that there was no testimony or indication that he was aware of the specific risk of getting the rag or his glove caught between the rolls, there was testimony that he always wore gloves, always cleaned the rolls with a rag and always positioned himself so as to minimize the possibility of getting his hand caught. (N.T. of 9/27/84 at 7, lines 5–10). From this testimony the jury could have inferred that plaintiff realized that the rag or glove could get caught, thereby pulling his hand into the pinch point.

*plaintiff assumed the risk.* (N.T. of 10/4/84 at 60). (Emphasis added).

Similarly, in responding to defendant's motion for a directed verdict on the grounds that the testimony established assumption of the risk as a matter of law, plaintiff's other attorney argued,

Well, your Honor, I believe, first of all, that any implication based on that testimony is just that. Its implication, which means it should go to the jury on the assumption of risk as far as what Mr. Fierro, what he meant when he said during cross-examination that he knew where he put his hand was less dangerous than putting it into the pinch point. (N.T. of 10/2/84 at 28).

Those observations bring us full circle to the conclusion that plaintiff is not entitled to a new trial on the grounds that assumption of the risk should have been removed from the jury's consideration. The issue was not raised at trial because plaintiff obviously realized at that time that a jury issue had been presented. Our subsequent examination of the testimony and the applicable law has convinced us of the correctness of that position.

## II. Failure to Excuse Two Prospective Jurors for Cause

During voir dire two panel members indicated that they would have difficulty awarding a large amount of damages because of their experiences as Vietnam veterans with the severe injuries suffered by others who served in the war. At a sidebar conference the Court denied plaintiff's motion to excuse those prospective jurors for cause. Eight jurors were then selected to try the case. Since none of the panel members were otherwise excused for cause and each party had three peremptory strikes, the jury was selected from among the first fourteen panel members. The panel members that plaintiff asked to have excused were # 10 and # 15. Because of the manner in which the jury was selected, # 15 could not have served as a juror in the case in any event. Plaintiff used his second peremptory challenge to eliminate # 10.

Thus, neither panel member served on the jury and the Court is unable to determine how the failure to grant plaintiff's motion prejudiced him. Plaintiff could and did exercise his privilege of peremptory challenge to eliminate the juror who may have had difficulty agreeing to a high award of damages. Plaintiff has presented no authority for the proposition that the elimination should have been in response to his challenge for cause rather than by peremptory challenge, nor has the Court discovered such authority.

Moreover, the opinions expressed by the two veniremen did not bear upon a central issue in the case. Neither indicated that they could not render a true verdict upon the evidence, nor did they specify what amount of damages they would consider too high. Finally, the jury never reached the question of damages because the verdict was for defendant. Consequently, even if we concluded upon reflection that plaintiff's motion should have been granted, the error was harmless and would not warrant a new trial. Fed.R.Civ.P. 61, *Adkins v. Dirickson,* 523 F.Supp. 1281 (E.D. Pa.1981).

## III. Admission of Evidence in Violation of F.R.E. 402 or 403.

Plaintiff's final argument in support of the motion for a new trial is based upon the purported error of allowing defendant's witness to testify that Reading Industries had provided guards for all but the first set of rollers on the Ruesch machine. Plaintiff had no objection to testimony that a guard for the marking rollers was available before the accident because that is where the injury occurred. However, he argued that the testimony of C. Richard Cunnius, then plant manager of the site where plaintiff was injured, that upon his arrival at the scene of the accident he noticed that the guards provided for the vertical and horizontal rollers, as well as for the marking rollers, were on the floor next to the machine, was either irrelevant or unduly prejudicial because there was no dispute that the injury occurred solely in the marking

rolls. Plaintiff was concerned both at trial and in the instant motion that the jury may have improperly inferred that he had a propensity for removing guards from the machine and could then conclude that a guard for the marking rollers would not have prevented the accident.

Earlier in the trial, defendant sought to cross-examine plaintiff's witnesses as to the existence of guards for the other rolls, but was prevented from doing so upon objection by plaintiff because the testimony sought was beyond the scope of the direct examination. Plaintiff had, however, introduced evidence with respect to the operation of the entire machine and in our discretion we determined that defendant, in presenting its own case, was entitled to put to the jury its theory that guards had been fabricated by plaintiff's employer for three of the four sets of rollers on the Ruesch machine but that all were unused prior to the accident. That issue was presented by one witness, Cunnius, who testified that all of the guards were on the floor when he arrived at the scene of the accident. (N.T. of 10/2/84 at 43, lines 7–20; 44, lines 7–13).

In contrast, plaintiff and several of his witnesses testified that no guards were ever made for the marking rollers prior to the accident. (N.T. of 9/26/84 at 73; 10/3/84 at 43, 47, 52). As noted, no testimony was permitted from those witnesses as to the existence of guards for any other set of rollers.

 From this record, plaintiff asks us to conclude that the prejudice to plaintiff in allowing Cunnius's testimony so far outweighed its probative value as to require a new trial. While it may be argued that the evidence adduced as to the other rolls was only slightly relevant, it was plaintiff who first opened the subject of the other rollers in eliciting testimony about the operation of the entire machine. He cannot now complain of the irrelevance of evidence concerning the other rollers. *See, U.S. v. Bolin,* 514 F.2d 554 (7th Cir.1975), quoted with approval in *Government of the Virgin Islands v. Felix,* 569 F.2d 1274 (3d Cir.1978).

Moreover, in order to find undue prejudice to plaintiff, we would be required to assume that the jury disregarded the testimony of all of plaintiff's witnesses, which directly contradicted defendant's witness as to the existence of a guard for the marking rolls, and instead focused upon and believed Cunnius's testimony with respect to guards for all the rolls. We would then be required to conclude that the jury took that small portion of testimony and enlarged upon it in the way plaintiff theorizes. That chain of events is too speculative to support the conclusion that this Court abused its discretion in allowing the testimony to which plaintiff objected.

Having found that none of plaintiff's asserted grounds for a new trial are substantial, the motion will be denied.