644 A.2d 1213

**Carol S. KUPETZ, Individually and as Administratrix of the Estate of Joseph J. Kupetz, Deceased, Appellant,**

v.

**DEERE & COMPANY, INC. and Troyer Construction Equipment Company, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1993.

Filed May 23, 1994.

Reargument Denied Aug. 1, 1994.

Petition for Allowance of Appeal Denied Dec. 15, 1994.

18

Gary Eiben, Erie, for appellant.

Theresa Homisak, Pittsburgh, for appellee Deere & Co.

Sue Beck, Erie, for appellee Troyer Const.

Before CAVANAUGH, TAMILIA and KELLY, JJ.

20

KELLY, Judge:

In this opinion, we are called upon to determine whether the "crashworthiness" or "second collision" doctrine is recognized as a valid theory of recovery under Pennsylvania law in a products liability action. We are also called upon to determine whether assumption of risk maintains its viability as a complete defense in an action brought pursuant to the "crashworthiness" or "second collision" doctrine. We hold that the "crashworthiness" or "second collision" doctrine is merely a subset of a products liability action and as such is a recognizable theory of recovery under Pennsylvania law. We also hold that assumption of risk is a complete defense to an action brought pursuant to the "crashworthiness" or "second collision" doctrine. Thus, we affirm.

The relevant facts and procedural history are as follows. The decedent, Joseph J. Kupetz, together with his brother, James Kupetz, established a company known as Kupetz Brothers in 1964. Kupetz Brothers was engaged in the business of paving, topsoil and materials work. Joseph Kupetz operated all of the various machines that Kupetz Brothers utilized in their business. In June of 1971, the Kupetz Brothers purchased a John Deere 350 bulldozer/crawler (JD 350) from Troyer Construction Equipment, Inc. (Troyer). The JD 350 was manufactured by Deere and Company (Deere) in 1970. At the time of its purchase, the JD 350 was not equipped by Deere with a rollover protection system (ROPS) as a standard part of the machine. The function of ROPS is to minimize the extent of bulldozer rollover and to protect the operator if a rollover occurs. The decedent and his brother were offered the option by Troyer of purchasing ROPS at an additional cost to them, but the brothers declined to purchase the optional ROPS for their JD 350. Troyer included with the JD 350 an operator's manual which was read by both brothers.

In August of 1988, the Kupetz Brothers purchased some topsoil from the Pennsylvania Department of Transportation (PennDOT) which they were required by the terms of the contract to remove from PennDOT's Peach Street Yard in

Erie. The topsoil was piled on a large, steeply sloped, irregularly shaped mound that was overgrown with weeds. On August 18, 1988, Joseph Kupetz appeared at the PennDOT yard to pay for the topsoil. An employee of Kupetz Brothers, Dale Smith, was then sent by either James Kupetz or the decedent to the PennDOT yard with a front-end loader and a dump truck to remove the topsoil; however, because the topsoil was too heavily compacted, he was unable to remove it with a front-end loader. Smith then radioed his predicament to the Kupetz Brothers' office. A short time later, the decedent arrived at the PennDOT yard with the JD 350. The decedent began assisting Smith to remove the topsoil by pushing it downward off the top of the mound into the front-end loader. The decedent would then back the JD 350 up the steeply sloped topsoil mound while Smith deposited the topsoil in the dump truck. The decedent and Smith continued to work in this manner for approximately one-half hour when after placing a topsoil load in the dump truck, Smith saw the JD 350 lying upside down on the back side of the topsoil mound. Smith ran to the place where the decedent and the JD 350 were located. Smith then shut off the engine and ran for help. The decedent was removed from the overturned JD 350 and was taken to the hospital where he died two days later. There were no eyewitnesses to the actual accident.

The decedent's widow, Carol S. Kupetz (appellant), individually and as executrix of the decedent's estate, filed a three-count complaint against Deere and Troyer. An amended complaint was subsequently filed by Ms. Kupetz on July 31, 1990. In Count I of her amended complaint, Ms. Kupetz asserted a products liability action alleging that the JD 350 was defectively designed, manufactured and delivered to the decedent by Deere and Troyer in an unreasonably dangerous and defective condition due to the absence of ROPS which rendered the machine uncrashworthy. In Count II of her amended complaint, Ms. Kupetz asserted that Deere and Troyer were negligent in the design, manufacture, marketing and sale of the JD 350 without ROPS. In Count III, Ms. Kupetz, in addition to the other damages claimed in Counts I

and II, sought to recover punitive damages from Deere and Troyer.

After extensive discovery occurred, the parties filed pretrial motions *in limine* seeking to exclude certain evidence. The trial court held pre-trial argument on the parties' respective motions *in limine*. As a result of this pre-trial argument, the trial court excluded from evidence the fact that ROPS was offered to buyers at the time the JD 350 was sold to the decedent and his brother. The trial court also excluded from evidence the fact that the decedent had stated to Troyer's salesman, Robert C. Brown, that Kupetz Brothers intended to use the JD 350 for flat terrain, low clearance work inside ships, and for grading residential driveways and garages. Additionally, the trial court precluded evidence regarding the fact that the decedent had available another bulldozer, a Caterpillar D-3 bulldozer *with* ROPS, that he chose not to use on the day of the accident. Finally, the trial court excluded from evidence that the Kupetz Brothers had removed ROPS from another bulldozer they owned. The trial court, however, denied Ms. Kupetz's request to exclude from evidence a photograph of the Kupetz Brothers' Caterpillar D-3 bulldozer that was equipped with ROPS. During the course of argument on the pre-trial motions *in limine,* Ms. Kupetz dropped her negligence cause of action and her claims for punitive damages and the case proceeded to trial solely on the products liability cause of action.

At trial, the court refused to admit testimony offered on behalf of Deere and Troyer from other experienced heavy equipment operators regarding their knowledge of the risk of using heavy machinery on dirt piles such as the one presented in the instant case. The trial court also refused to admit the entire operator's manual for the JD 350 which included information that ROPS was available as safety equipment and provided safety suggestions for using the JD 350 as offered by Deere and Troyer. The trial court, instead, only allowed into evidence a single page of the owner's manual which stated never drive the JD 350 close to the edge of a ditch or excavation.

At the close of the trial, the following special interrogatories were issued to the jury for their consideration:

1. Did the Plaintiff prove that the John Deere bulldozer in question was defective when sold to Kupetz Bros.?

   YES_____          NO_____

2. Did the Plaintiff prove that such defect as you found to exist in the John Deere bulldozer at the time of its sale to Kupetz Bros. was a substantial factor in bringing about the death of Joseph Kupetz?

   YES_____          NO_____

If your answer is "NO", inform the tipstaff that you have reached a verdict; if your answer is "YES" go on to Interrogatory No. 3.

3. Did the Defendants prove that the decedent, Joseph Kupetz, voluntarily assumed the risk of injury and death in the manner in which his injury and death occurred?

   YES_____          NO_____

If your answer is "YES", inform the tipstaff that you have reached a verdict; if your answer is "NO" go on to Interrogatory No. 4.

   IF YOU HAVE ANSWERED QUESTIONS 1 AND 2 "YES" AND QUESTION 3 "NO" *THEN* PROCEED TO ASSESSMENT OF DAMAGE QUESTION BELOW.

4. What is the total dollar amount of your verdict?

   WRONGFUL DEATH          $_____

   SURVIVAL ACTION          $_____

(Official Record # 92, Reproduced Record 190A–191A). The jury responded in the affirmative to the first three special interrogatories, finding that while the JD 350 was defective without ROPS and a substantial cause of the decedent's fatal injuries, the decedent assumed the risk for his fatal injuries. Thus, the jury returned a verdict in favor of Deere and Troyer. Post-trial motions were filed by Ms. Kupetz requesting the entry of judgment in her favor, or, in the alternative, a new trial. Troyer and Deere also filed post-verdict motions questioning several of the trial court's pre-trial and trial rulings to exclude certain evidence. All post-verdict motions were denied by the trial court. The trial court, however, granted Ms. Kupetz's motion to discontinue her case against Troyer. Ms. Kupetz then filed a timely appeal which was followed by the timely cross-appeals of Troyer and Deere.[1]

---

1. We note that the cross-appeals filed by Troyer at No. 268 Pittsburgh 1993 and Deere at No. 288 Pittsburgh 1993 were quashed by *per curiam* order of the full court on August 25, 1993. Therefore, the cross-appeals of Troyer and Deere are no longer part of this case and will not be addressed herein.

We will begin by addressing the issues raised by Ms. Kupetz in her appeal from the judgment in favor of Troyer and Deere. In her appeal, Ms. Kupetz raises the following issues for our review:

I.   DOES ASSUMPTION OF THE RISK RETAIN ITS VIABILITY AS A DEFENSE IN PRODUCTS LIABILITY ACTIONS WHEREIN THE PLAINTIFF'S CLAIM IS BASED UPON A LACK OF CRASHWORTHINESS OF A VEHICLE?

II.  IS ASSUMPTION OF THE RISK AVAILABLE AS A DEFENSE TO A LACK OF CRASHWORTHINESS CLAIM IN A CASE WHERE THE EVIDENCE ALLEGEDLY SUPPORTING ASSUMPTION OF THE RISK IS NOT DISTINGUISHABLE FROM COMPARATIVE NEGLIGENCE?

III. WAS THERE SUFFICIENT EVIDENCE OF THE DECEDENT'S KNOWLEDGE OF THE DEFECTIVE CONDITION OF THE TRACTOR OR OF HIS VOLUNTARILY ASSUMING THE RISK TO SUSTAIN THE JURY'S FINDING THAT THE DECEDENT HAD ASSUMED THE RISK?

IV.  WHERE THERE WAS ABSOLUTELY NO EVIDENCE THAT THE DECEDENT KNEW OF THE EXISTENCE OF THE DEFECTIVE CONDITION OF A TRACTOR UPON WHICH HE WAS RIDING, WHICH DEFECT WAS A SUBSTANTIAL CAUSE OF HIS DEATH, AND WHERE THERE WAS ABSOLUTELY NO EVIDENCE THAT THE DECEDENT VOLUNTARILY ASSUMED THE RISK CREATED BY THE DEFECT, WAS THE ISSUE OF ASSUMPTION OF THE RISK PROPERLY SUBMITTED TO THE JURY?

V.   MAY THE DEFENDANTS IN WHOSE FAVOR JUDGMENT WAS ENTERED FILE A CROSS-APPEAL?

Appellant's Brief at 3.

In her first four issues on appeal, Ms. Kupetz contends that the trial court committed error by instructing the jury on the defense of assumption of risk because: 1) assumption of risk is not a viable defense to a claim brought under the crashworthiness doctrine; 2) the evidence presented by Troyer and Deere in support of the assumption of risk defense is indistinguishable from evidence that would be utilized to show decedent's death was partially caused by his own contributory negligence which is not a permissible defense in a products liability action; and 3) the evidence presented by Troyer and Deere merely showed that the initial accident may have been caused by the momentary inadvertence or negligence of the decedent; the evidence did *not* show that the decedent was subjectively aware that the absence of ROPS rendered the bulldozer uncrashworthy in a rollover accident, and that he appreciated this danger and voluntarily chose to encounter this danger by operating the defective bulldozer on the hill.  Thus, the evidentiary requirements for an assumption of risk instruction in a products liability action were not met and the instruction was, therefore, erroneous.

We begin our analysis by considering whether the "crashworthiness" or "second collision" doctrine is a permissible theory of recovery in this Commonwealth and whether assumption of risk is a viable defense to such a claim.

The history of Pennsylvania's modern law of products liability begins with *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).   In that case, the Pennsylvania Supreme Court adopted section 402A of the Restatement of Torts Second. That section reads in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his proper-

ty, if . . . (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Two years after its adoption of section 402A in *Webb,* the Pennsylvania Supreme Court held that "lack of proper safety devices can constitute a defective design for which there may be recovery." *Bartkewich v. Billinger,* 432 Pa. 351, 354, 247 A.2d 603, 605 (1968).

*Hammond v. International Harvester Co.,* 691 F.2d 646, 649 (1982).

█ In order to submit a section 402A products liability case to a jury, it must be shown that the product was defective, that the defect existed while the product was in the control of the manufacturer or retailer, and that the defect was the proximate cause of the decedent's injuries. *Walton v. Avco Corp.,* 530 Pa. 568, 576, 610 A.2d 454, 458–59 (1992); *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93, 337 A.2d 893, 898–99 (1975); *Forry v. Gulf Oil Corp.,* 428 Pa. 334, 340, 237 A.2d 593, 597 (1968). A product is defective when it is not fit for the intended use for which it is sold. *Azzarello v. Black Bros. Co. Inc.,* 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978); *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974); *Barris v. Bob's Drag Chutes & Equipment,* 685 F.2d 94, 101 (3rd Cir.1982).

█ The crashworthiness doctrine is merely a subset of a products liability action pursuant to Section 402A and usually arises in the context of a vehicular accident. *Dorsett v. American Isuzu Motors Inc.,* 805 F.Supp. 1212, 1218 (E.D.Pa. 1992); *Roe v. Deere and Co., Inc.,* 855 F.2d 151, 154 (3d Cir.1988). The crashworthiness doctrine provides that a manufacturer/seller is liable in "situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the design defect." *Mills v. Ford Motor Co.,* 142 F.R.D. 271 (M.D.Pa.1990) (citing *Barris v. Bob's Drag Chutes & Safety Equipment, supra* at 99).

■■■■ The term crashworthiness means the protection that a motor vehicle affords its passenger against personal injury or death as a result of a motor vehicle accident. *Barris v. Bob's Drag Chutes & Safety Equipment, supra* at 96 n. 1; *Jeng v. Witters,* 452 F.Supp. 1349, 1355 (M.D.Pa.1978), *aff'd mem,* 591 F.2d 1335 (1979). The term "second collision," as used in the definition of crashworthiness of a motor vehicle in products liability cases, generally refers to the collision of the passenger with the interior part of the vehicle after the initial impact or collision. *Jeng v. Witters, supra* at 1355; *Householder v. General Motor Corp., et al.,* 33 Beaver 30, 31 (1973). The second collision concept, however, is still applicable in situations where the person is thrown from the vehicle and impacts with the highway. *Jeng v. Witters, supra* at 1355. The principle behind the "second collision" concept is that, because of the way the vehicle has been manufactured, a person's injuries have been aggravated unnecessarily; and such a concept has equal applicability, whether the person's second collision is with the interior of the vehicle or the exterior ground. *Id.*

> The effect of the crashworthiness doctrine is that a manufacturer has a legal duty to design and manufacture its product to be reasonably crashworthy. *Huddell [v. Levin],* 537 F.2d [726] at 735 [3rd Cir.1976]. *Accord, Olsen [v. U.S.],* 521 F.Supp. [59] at 63 [E.D.Pa.1981]. In terms of strict product liability, this means that a manufacturer has to include accidents among the "intended" uses of its product. *Huddell,* 537 F.2d at 735. A manufacturer who fails to fulfill this legal duty will be liable to the passenger of a car whose injuries are increased due to the design defect in the automobile. Liability will attach even though the defect in manufacture or design did not cause the initial accident or impact.

*Barris v. Bob's Drag Chutes & Safety Equipment, Inc., supra* at 98.

■■■■ In order to prevail on a crashworthiness theory in a products liability action under Section 402A, a plaintiff must demonstrate 1) that the design of the vehicle was defective

and that when the design was made, an alternative, safer design practicable under the circumstances existed; 2) what injuries, if any, would have resulted to the plaintiff had the alternative, safer design, in fact, been used; and 3) some method of establishing the extent of plaintiff's enhanced injuries attributable to the defective design. *Dorsett v. American Isuzu Motor, Inc., supra; Craigie v. General Motors Corp.,* 740 F.Supp. 353 (E.D.Pa.1990).

Although the federal courts have stated that there have been no authoritative Pennsylvania appellate cases adopting or rejecting the "crashworthiness" or "second collision," doctrine, they have adopted the "crashworthiness" or "second collision" doctrine on the basis of their prediction that our Supreme Court would adopt this doctrine when faced with the issue. *See Roe v. Deere and Co., Inc., supra; Craigie v. General Motors Corp., supra; Jeng v. Witters, supra.* Our Supreme Court, however, has implicitly recognized the "crashworthiness" or "second collision" doctrine in *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975).

In *McCown v. International Harvester Co., supra,* the appellee's truck, unrelated to any steering difficulty, struck a guardrail while the appellee was attempting to complete a tight turn. The collision caused the steering wheel to spin rapidly in the direction opposite to the turn. The spokes of the spinning wheel struck the appellee's right arm, fracturing his wrist and forearm. The appellant admitted that the steering system in the truck was defective but claimed that the appellee's careless driving rendered him contributorily negligent for his injuries. While the Supreme Court's decision in this case mainly rejected contributory negligence as an available defense in a products liability action, the court did recognize that in a products liability action the defect itself did not have to be the cause of the accident and permitted the appellee to recover where the defect was the cause of the appellee's injuries after the collision occurred. Accordingly, as our Supreme Court has long explicitly recognized the viability of a cause of action for products liability pursuant to Section 402A, *see Webb v. Zern, supra,* and has implicitly

recognized the viability of the "crashworthiness" or "second collision" doctrine in *McCown v. International Harvester Co.*, *supra*, we hold that the "crashworthiness" or "second collision" doctrine, which is merely a subset of a cause of action for products liability under Section 402A, is a permissible theory of recovery in this Commonwealth.[2]

██ Next, we must determine whether the assumption of the risk theory maintains its viability as a defense in a products liability action brought under the "crashworthiness" or "second collision" doctrine. Ms. Kupetz maintains that because the same evidence presented by Troyer and Deere in the products liability action supporting its assumption of the risk defense could also be utilized to support a prohibited contributory negligence defense, the doctrine of assumption of risk is no longer a viable defense in a products liability crashworthiness case. We disagree.

██ Assumption of risk and contributory negligence theories may sometimes overlap because certain conduct may exhibit all the elements of both. *See Fish v. Gosnell*, 316 Pa.Super. 565, 576–77, 463 A.2d 1042, 1048 (1983); *Weaver v. Clabaugh*, 255 Pa.Super. 532, 388 A.2d 1094 (1978). However, assumption of risk is a separate defense with a distinct character. *Fish v. Gosnell, supra* 316 Pa.Super. at 577, 463 A.2d at 1048; *Joyce v. Quinn*, 204 Pa.Super. 580, 205 A.2d 611 (1964). All voluntary risk-taking that can be described by the ambiguous phrase "assuming risk" does not constitute the defense of assumption of the risk. *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 612–13, 437 A.2d 1198, 1209 (1981) (plurality) (citing *Tiller v. Atlantic Coast Line Railroad Co.*, 318 U.S. 54, 72, 63 S.Ct. 444, 453, 87 L.Ed.

2. We note that the "crashworthiness" or "second collision" doctrine has been discussed approvingly in dicta by this Court in *Lobianco v. Property Protection Inc.*, 292 Pa.Super. 346, 356–57, 437 A.2d 417, 422–23 (1981) (*en banc*). Additionally, while a member of the Common Pleas Court of Beaver County, President Judge Rowley of this Court approved the "crashworthiness" or "second collision" doctrine and permitted such a case to proceed to trial over defendant's motion for summary judgment. *See Householder v. General Motors Corp., et al.*, 33 Beaver 30 (1973).

610, 620 (1943) (Frankfurter, J., concurring)). "Rather, all elements of the defense—that the plaintiff "fully understands" the specific risk, 'voluntarily chooses' to encounter it and 'under circumstances that manifest a willingness to accept it'—must be 'demonstrat[ed] ... in fact' before the theory will be submitted to the jury." *Fish v. Gosnell, supra* 316 Pa.Super. at 577, 463 A.2d at 1048 (citing *Marinelli v. Montour R.R. Co.,* 278 Pa.Super. 403, 416–17, 420 A.2d 603, 610 (1980)).

A particularly difficult element of the defense is in defining "circumstances that manifest a willingness to accept" the risk. Restatement (Second) of Torts, § 496C. The nature and purposes of the defense help courts in defining these circumstances. Assumption of risk "reflects the individualism of the common law" which allows people to make their own choices and does not undertake to "protect [them] from the effects of [their] own ... voluntary actions." *Rutter v. Northeastern Beaver County School District, supra* 496 Pa. at 606–607, 437 A.2d at 1206.

Thus, the essence of the assumption of risk defense is not fault but that the plaintiff changed his position. Before the injury, he intelligently acquiesced in a known danger and abandoned his right to complain, but afterwards, seeks to assert the claim he had waived. *See Jones v. Three Rivers Management Corp., supra* [483 Pa. 75, 394 A.2d 546 (1978) ]. To imply such waiver from conduct and circumstances alone can be a source of "misapprehension and confusion" and "frequent misapplication." W. Prosser, Law of Torts, at 445 (4th ed.1971). Aware of this danger, our Court announced, even before comparative negligence, that it would take a "restrictive attitude" toward the circumstances from which the assumption of risk defense might be implied. *Fahringer v. Rinehimer,* 283 Pa.Superior Ct. 93, 98–99, 423 A.2d 731, 734 (1980). Preliminary and deliberate conduct done with an awareness of the specific risks inherent in the activity is a proper basis for implying assumption of risk. Conduct close in time and place to the accident, on the other hand, while it may contain an element of voluntary risk-taking, does not demonstrate a deliberate abandonment of

the right to complain, but rather is better judged by its reasonableness, that is, by negligence principles.

*Fish v. Gosnell, supra* 316 Pa.Super. at 577–78, 463 A.2d at 1048–49.

Thus, the differences between the defense of assumption of risk and the defense of contributory negligence has been aptly summed as follows:

> [T]he practical difference [between assumption of risk and contributory negligence] is in the degree of proximity to the particular harm. The preliminary conduct of getting into a dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent.

*Id.* at 578–79, 463 A.2d at 1049 (citing *Schlemmer v. Buffalo, Rochester & Pittsburgh Ry.*, 205 U.S. 1, 27 S.Ct. 407, 51 L.Ed. 681 (1907) (construing Pennsylvania law)).

Our Supreme Court has held that a plaintiff cannot be precluded from recovery of a products liability case because of his own negligence. *McCown v. International Harvester Co., supra; Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). Thus, our Supreme Court has specifically rejected contributory negligence as a defense in a products liability action. *McCown v. International Harvester Co., supra* 463 Pa. at 15–16, 342 A.2d at 382.

The Supreme Court, however, has held that a plaintiff is precluded from recovery in a products liability action if he knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect. *Berkebile v. Brantly Helicopter Corp., supra* 462 Pa. at 100, 337 A.2d at 901 (citing *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 327, 223 A.2d 746, 748 (1966)). Thus, assumption of risk remains a defense in a products liability case. *Howell v. Clyde*, 533 Pa. 151, 162 n. 10, 620 A.2d 1107, 1113 n. 10 (1993); *Rutter v. Northeastern Beaver County School District, supra* 496 Pa. at 613, 437 A.2d at 1209; *Berkebile v. Brantly Helicopter Corp., supra* 462 Pa. at 100, 337 A.2d at 901. An assumption of risk instruction,

however, may only be given in a products liability action where there is evidence introduced by the defendant that the plaintiff had subjective knowledge of the defect causing the injury and appreciated the danger involved before using the product. *Berkebile v. Brantly Helicopter Corp., supra* 462 Pa. at 100, 337 A.2d at 902. Under no circumstances, however, is a plaintiff's knowledge of the defect contained in the product to be determined utilizing the objective knowledge of a "reasonable man." *Id.* This Court has followed this well-established precedent on numerous occasions, *see Lonon v. Pep Boys, Manny, Moe and Jack,* 371 Pa.Super. 291, 296, 538 A.2d 22, 25 (1988); *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 49, 527 A.2d 140, 146 (1987); *Walasavage v. Marinelli,* 334 Pa.Super. 396, 408, 483 A.2d 509, 515 (1984), and, as an intermediate appellate court, is not permitted to deviate from this precedent unless or until our Supreme Court sees fit to change it. *Foflygen v. Zemel,* 420 Pa.Super. 18, 615 A.2d 1345 (1992).

Although the *McCown v. International Harvester Co., supra* decision preceded the enactment of Pennsylvania's Comparative Negligence Law, 42 Pa.C.S.A. § 7102, our Supreme Court has not subsequently considered the effect of the Comparative Negligence Law on its holding. *Remy v. Michael D's Carpet Outlets,* 391 Pa.Super. 436, 446, 571 A.2d 446, 452 (1990). Instead, the Supreme Court has continually and steadfastly refused to allow a products liability action under Section 402A to become contaminated by negligence principles. *See Lewis v. Coffing Hoist Division, Duff Norton Co., Inc.,* 515 Pa. 334, 528 A.2d 590 (1987); *Azzarello v. Black Brothers Co., Inc., supra; Berkebile v. Brantly Helicopter Corp., supra.* The Supreme Court has also refused to permit the concept of comparative fault to creep into a products liability action. *Walton v. Avco Corp., supra* 530 Pa. at 584, 610 A.2d at 462. Because of our Supreme Court's emphatic divorcement of negligence concepts from our products liability law, this Court has declined to follow sister states in holding comparative negligence principles applicable to products liability actions. *Remy v. Michael D's Carpet Outlets, supra* 391

Pa.Super. at 446–47, 571 A.2d at 452; *Staymates v. ITT Holub Industries, supra* 364 Pa.Super. at 45, 527 A.2d at 144; *Dambacher v. Mallis*, 336 Pa.Super. 22, 60, 485 A.2d at 408, 428 (1984), *appeal dismissed*, 508 Pa. 643, 500 A.2d 428 (1985). Therefore, the law in this Commonwealth remains that the comparative fault of a plaintiff is irrelevant in products liability cases; if there has been an assumption of risk, however, in that event, there is complete defense. *Remy v. Michael D's Carpet Outlets, supra* 391 Pa.Super. at 447, 571 A.2d at 452.

Accordingly, because the "crashworthiness" or "second collision" doctrine is merely a subset of a products liability action, assumption of risk maintains its viability as a complete defense to all claims brought under this doctrine. A plaintiff's contributory negligence may not, however, be utilized under any circumstances to apportion fault between the plaintiff and defendant in a crashworthiness or any other type of products liability action. Thus, in situations where the evidence submitted at trial overlaps and exhibits elements of both assumption of risk and contributory negligence, an assumption of risk jury instruction is warranted while a contributory negligence instruction is not. Additionally, an instruction requiring the jury to compare and apportion the relative fault of the plaintiff and the defendant in a products liability action is not permitted.

Next, we must determine whether, based upon the evidence presented by Troyer and Deere, the trial court properly gave the jury an assumption of risk instruction. As stated earlier, a plaintiff is precluded from recovery in a products liability action if he or she knows of the specific defect eventually causing his injury and voluntarily proceeds to use the product with knowledge of the danger caused by the defect. *Berkebile v. Brantly Helicopter Corp., supra* 462 Pa. at 100, 337 A.2d at 901; *Ferraro v. Ford Motor Co., supra* 423 Pa. at 327, 223 A.2d at 748. Preliminary and deliberate conduct done with an awareness of the specific risk inherent in the activity is a proper basis for implying assumption of risk. *Fish v. Gosnell, supra* 316 Pa.Super. at 578, 463 A.2d at 1049. A plaintiff's knowledge and understanding of the risk may be

34

shown by circumstantial evidence. *Mucowski v. Clark*, 404 Pa.Super. 197, 202–03, 590 A.2d 348, 350 (1991); *Staymates v. ITT Holub Industries, supra* 364 Pa.Super. at 49, 527 A.2d at 146; *Weaver v. Clabaugh, supra* 255 Pa.Super. at 536, 388 A.2d at 1096. In other words, evidence that a party assumed a risk may be inferred from surrounding circumstances; there need not be actual proof that the plaintiff knew, understood or appreciated the risk. *Fierro v. Ruesch Corp.*, 610 F.Supp. 778, 782 (E.D.Pa.1985) (citing *Green v. Parisi*, 478 F.2d 313, 315 (3d Cir.1973)); *see also Weaver v. Clabaugh, supra; Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 (1953).

▮ At trial, Troyer and Deere presented evidence that the decedent had been in the business of operating heavy construction machinery for more than twenty years and had operated the ROPS-less JD 350 on numerous occasions since purchasing it in 1971. Troyer and Deere also presented evidence that the decedent had read the owner's manual including portions of the manual which stated that the operator should use the utmost caution when operating the JD 350 around ditches and excavations. Additionally, Troyer and Deere presented evidence which showed that the decedent was the co-owner of a newer bulldozer that was equipped with ROPS.

Moreover, the evidence elicited at trial reveals that the decedent had been on the PennDOT lot two times before the accident occurred. The evidence further reveals that the initial decision to use a front-end loader, instead of the JD 350, to remove the topsoil from the PennDOT yard was made by either the decedent or his brother. Finally, the evidence showed that the decedent operated the ROPS-less JD 350 on a steeply sloped topsoil mound in a slow, deliberate and systematic fashion for more than one-half hour before the ROPS-less JD 350 rolled over the back side of the topsoil mound.

Accordingly, the evidence reveals that the decedent, through his long experience with operating heavy construction machinery and reading of the owner's manual was aware that

the JD 350 could tip over when used on a steeply graded slope. *See Watson v. Zanotti Motor Company,* 219 Pa.Super. 96, 280 A.2d 670 (1971) (appellant, a first time snowmobile operator, could not have known that snowmobiles were inherently risky when used on an icy surface and, therefore, could not have assumed the risk that the snowmobile would tip over). The evidence also reveals that the decedent was cognizant of the existence and purpose of ROPS through his co-ownership of another bulldozer equipped with such a safety device, and the lack of ROPS on the JD 350. Additionally, the evidence implies that the decedent or his brother preliminarily believed that the JD 350 was unsuited for the job of removing the dirt pile from the PennDOT yard by directing that a front-end loader be used to remove the topsoil. Finally, the evidence demonstrates that the decedent operated the ROPS-less JD 350 in a slow, deliberate and systematic fashion on a steeply sloped topsoil mound for more than one-half hour before the fatal accident occurred, thereby raising the logical inference that he knew what he was doing was very dangerous. Thus, based upon the evidence elicited at trial, there was a sufficient basis from which the jury could infer that the decedent was subjectively aware of the defective nature of the ROPS-less JD 350 and appreciated the danger of using this defective bulldozer on a steeply sloped surface, so that the jury could conclude that the decedent assumed the risk for his fatal injuries. Therefore, in accordance with the evidence presented by Troyer and Deere, the trial court properly submitted an assumption of risk instruction for the jury's consideration.

Based upon the foregoing, the judgment entered in favor of Troyer and Deere is affirmed.

Judgment affirmed.

CAVANAUGH, J., joined the opinion by KELLY, J., and filed a concurring opinion.

CAVANAUGH, Judge, concurring:

I join in the majority decision, but write to express my disagreement with the per curiam order of this court which

36

quashed the cross-appeals of Troyer and Deere. These parties are asserting cross-appeals, not appeals, and could be duly aggrieved in the event a new trial is awarded by this or any other court with appropriate jurisdiction.

Moreover, the timeliness of the cross-appeals has not been raised by the parties and the extent to which the cross-appeals may be said to have been untimely was based upon a conjectural analysis which was not subjected to an opportunity for adversarial consideration by the parties to this case.