**Kenneth DEPAEPE, Plaintiff–Appellant,**

**v.**

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 92–2297.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1994.

Decided Aug. 16, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 14, 1994.*

David A. Novoselsky, Novoselsky & Associates, Chicago, IL (argued), Richard M. Goodman, Goodman, Lister, Seikaly and Peters, Detroit, MI, Stephen M. Passen, Chicago, IL, for plaintiff-appellant.

Hugh C. Griffin (argued), Diane I. Jennings, L. Anthony Lehr, Thomas J. Burke, Jr., Lord, Bissell & Brook, Chicago, IL, for defendant-appellee.

* Honorable Walter J. Cummings did not partici-   pate in consideration of this petition.

**738**

Before MANION, KANNE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Kenneth DePaepe became a quadriplegic when his 1984 Buick Regal was struck by another vehicle on August 15, 1984. He filed this diversity action against the Buick's manufacturer, General Motors ("GM"), and a jury returned a verdict in GM's favor after a lengthy trial. DePaepe's appeal raises two important issues under Illinois law: whether it was appropriate to instruct the jury on the concept of "enhanced injury" where the evidence established that plaintiff suffered a single, indivisible harm, and whether evidence that DePaepe's vehicle had a functional restraint system was properly admitted. We find no error in the limited introduction of seat belt evidence here. Yet because the jury instructions on enhanced injury were inconsistent with Illinois law, and because, in our view, those instructions prejudiced DePaepe's substantial rights, we reverse the judgment below and remand for a new trial.

## I. BACKGROUND

On August 15, 1984, DePaepe's 1984 Buick Regal was struck on the passenger side by an automobile driven by Rosemary Galganski–Bartlett. The collision caused the Buick to veer across two lanes of traffic and to hit a curb before stopping. Witnesses found De-Paepe on the front floor of the vehicle with his head against the passenger-side door. His legs were under the steering wheel, and his feet were at an angle on the driver's seat. It was later determined that DePaepe had suffered a multiple fracture of his spinal cord, leaving him a quadriplegic.

DePaepe sued GM in federal court, invoking our diversity jurisdiction.[1] He attempted to establish through expert testimony at trial that the Buick's sun visor/header system was unreasonably dangerous and that it had caused his injury. DePaepe's primary expert, Steven Syson, explained to the jury that a "header" is the horizontal, metal structure that runs across the top of the windshield,

providing support as well as a mounting surface for the windshield. In Syson's opinion, a header should be designed with a smooth surface, instead of a box-like rectangular design, so that in an accident, an occupant's head will glide past the header and into the windshield. Syson explained that automobile windshields are designed with more energy absorbing capacity than the metal header, so that the windshield will minimize the rate of deceleration when an object strikes it, thereby reducing the risk of serious injury. It was Syson's opinion that the header in De-Paepe's vehicle was not a "glide" header because of its shape and the ridges that GM had placed on its surface.

In attempting to reconstruct the accident, Syson testified that the collision between the two vehicles caused DePaepe to be thrown forward and to the right. Syson believed that DePaepe's head was moving at approximately a forty-five degree angle when it brushed the edge of the rear-view mirror, hit the roof liner, and then was "pocketed" by the ridges in the header. This abruptly stopped the progress of DePaepe's head as his body moved steadily toward the dashboard. According to Syson, DePaepe's forehead then contacted the edge of the passenger-side sun visor, which had moved forward slightly in the initial collision, and pushed the visor into the windshield. This served to further entrap DePaepe's forehead as his torso continued into the dashboard. The abrupt deceleration of DePaepe's head, in connection with his moving torso, caused a compression of his neck and spine, resulting in the double fracture of his spinal cord. It was Syson's view that the ridges in the header, in conjunction with the unrecessed and unpadded sun visor, prevented DePaepe's head from gliding smoothly into the windshield, resulting in his tragic injury. Syson believed that GM could and should have used different header and sun visor designs that in all likelihood would have prevented the type of injury incurred here.

GM's experts disputed Syson's claim that either the header or the sun visor were defectively designed. Indeed, they indicated that the header in DePaepe's vehicle included

---

1. DePaepe settled his claim against Galganski-    Bartlett.

certain of the glide characteristics that Syson had identified.

Plaintiff's experts surmised that if De-Paepe's head had glided past the header and sun visor and into the windshield, he would have walked away with little or no injury. GM's experts disagreed because they believed that even if the sun visor had been recessed and equipped with additional padding, the energy forces created by the accident were sufficient to produce a similar injury. Indeed, one of GM's experts indicated that DePaepe may have suffered the same injury even had his head struck the windshield directly. After three weeks of such debate, the jury returned a general verdict in GM's favor.

## II. DISCUSSION

### A. "Enhanced Injury"

■ DePaepe's primary argument on appeal is that the district court erred as a matter of law in instructing the jury that he was required to show an "enhanced injury" that was proximately caused by the alleged defect in the sun visor/header system.[2] De-Paepe maintains that because he suffered a single, indivisible injury, the concept of enhanced injury had no place in his case. In DePaepe's view, the district court's repeated reference to "enhanced injuries," along with its burden of proof instruction, suggested to the jury that he had to prove first what injuries would have resulted absent the alleged design defect and then the enhanced injuries that were proximately caused by that defect. This, DePaepe suggests, was an impossible burden, as it would require him to divide up a single, indivisible injury and to apportion it between distinct causes. De-Paepe further argues that the instructions on enhanced injury were inconsistent with Illinois law, which makes two potential tortfeasors jointly and severally liable for an indivisible injury. DePaepe therefore contends that he is entitled to a new trial so that his claim can be considered by a properly instructed jury.[3]

2. Although the term "enhanced injuries" was used throughout the instructions, DePaepe primarily focuses on the following burden of proof instruction:

> The plaintiff has the burden of proving each of the following propositions: First, that the condition claimed by the plaintiff as stated to you in these instructions existed in the 1984 Buick Regal; second, that the condition made the 1984 Buick Regal unreasonably dangerous; third, that the condition existed at the time the 1984 Buick Regal left the control of the defendant General Motors; fourth, *that the plaintiff sustained enhanced injuries; fifth, that the condition of the 1984 Buick Regal was a proximate cause of enhanced injuries to the plaintiff beyond those he would have otherwise sustained in the collision.*
> If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. But if, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved, then your verdict should be for the defendant General Motors.

(Tr. at 2193–94 (emphasis added).)

3. GM's first response is that DePaepe waived the enhanced injury issue (*see* Fed.R.Civ.P. 51) by failing to argue below that the concept of enhanced injury is not recognized in Illinois where the plaintiff has suffered a single, indivisible injury. GM maintains that DePaepe objected to the

jury instructions below only on the ground that his proof at trial had established enhanced injury as a matter of law and that, as a result, the issue should not be submitted to the jury. The record, however, convinces us that DePaepe preserved the issue. GM argued below that it was De-Paepe's burden to show which portion of his injuries had been caused by the alleged defect and which portion would have been incurred in any event. GM contended and convinced the district court that it was responsible only for DePaepe's enhanced injuries—*i.e.*, those injuries caused by the defect that were over and above any injuries that, in all probability, would have been incurred from the collision even absent a defect. (Tr. at 2046–48.) DePaepe responded that it would be improper to instruct the jury on the concept of enhanced injury because there was no evidence suggesting that the plaintiff's injuries could be apportioned in that way. (*Id.* at 2044–46.) Thus, DePaepe essentially did argue below that his injuries were indivisible. The district court nonetheless decided to instruct the jury that GM was responsible only for DePaepe's enhanced injuries. On the day following the instruction conference, DePaepe's counsel renewed his objection to the enhanced injury instructions by making a motion for judgment as a matter of law, in which he again argued that "based on the proofs in this record, there is no evidence in this case whatsoever [that] would justify the submission of the issue of enhanced injury to the jury. This is in no sense an enhanced injury case." (Tr. at 2119.) The issue was not waived.

We agree with DePaepe that the concept of enhanced injury had no place in this case, but unfortunately, the Illinois courts made that clear only after this trial was complete.[4] In *Oakes v. General Motors Corp.*, 257 Ill. App.3d 10, 194 Ill.Dec. 844, 628 N.E.2d 341 (1993), *appeal denied*, 155 Ill.2d 563, 198 Ill.Dec. 542, 633 N.E.2d 4 (1994), decided during the pendency of this appeal, the Illinois Appellate Court addressed the very issue presented here. That case too involved an automobile accident in which the plaintiff had sustained a fractured vertebrae, resulting in permanent incomplete quadriplegia. Oakes maintained at trial that his injury had been caused by the vehicle's defective seatback, which collapsed in the rear-end collision, whereas GM argued that Oakes would have suffered the same or similar spinal injuries even had the seatback remained upright. The jury returned a verdict for the plaintiff, and on appeal, GM challenged the trial court's refusal to instruct the jury on enhanced injury, arguing that the court should have required Oakes to separate out his enhanced injuries before he could recover from the vehicle's manufacturer.

The Illinois Appellate Court rejected GM's arguments, finding them inconsistent with the decisions of the Illinois Supreme Court in *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill.2d 429, 170 Ill.Dec. 633, 593 N.E.2d 522 (1992), and *Buehler v. Whalen*, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (1977). *Burke* and *Buehler*, the appellate court held, clearly establish in Illinois that "defendants are to be held jointly and severally liable when the plaintiff's injury is indivisible, assuming, of course, that evidence exists to support a finding that each defendant proximately caused the plaintiff's injury." 194 Ill.Dec. at 850–51, 628 N.E.2d at 347–48.[5] The Illinois Supreme Court held in *Burke* that quadriplegia is a single, indivisible injury [170 Ill.Dec. at 637, 593 N.E.2d at 526], and *Oakes* therefore determined that GM's enhanced injury instructions were improper,

as the company was jointly and severally liable for the entire injury. 194 Ill.Dec. at 851, 628 N.E.2d at 348.

Significantly, the court rejected the very arguments GM advances here and, in the process, disapproved of the burden imposed on DePaepe below of showing an enhanced injury. As it has done here, GM argued in *Oakes*:

> notwithstanding the holdings in *Burke* and *Buehler*, that application of the enhanced injury doctrine in crashworthiness cases does not require that the injuries be divisible. It maintains, rather, that the doctrine requires the jury to compare all the injuries plaintiff actually sustained in the accident (divisible or indivisible) against all the injuries (divisible or indivisible) that plaintiff would have sustained in the accident absent the alleged defect. Moreover, General Motors argues that the burden is on the plaintiff to prove the enhanced injuries.

194 Ill.Dec. at 851, 628 N.E.2d at 348. To support these propositions, GM relied in *Oakes*, as it does here, on *Huddell v. Levin*, 537 F.2d 726, 737–38 (3d Cir.1976), where the Third Circuit required a plaintiff alleging a design defect to prove:

> (1) the existence of an alternative safer design;
>
> (2) the injuries he would have sustained had the alternative safer design been employed at the time of the accident; and
>
> (3) the extent of the enhanced injuries attributable to the defective design.

*Oakes*, 194 Ill.Dec. at 851, 628 N.E.2d at 348. Yet *Oakes* observed that under *Huddell*, the plaintiff "would be required to establish what injuries he might have received even though he did not receive them"—in other words, "to prove a negative based on a hypothetical set of facts." *Id.* The court considered this to be nearly an insurmountable burden in a case where the plaintiff's injury is "incapable of being logically or reasonably divided." *Id.*

---

4. The district court certainly cannot be faulted for taking the other view, as the state courts have split on the question. *See Polston v. Boomershine Pontiac–GMC Truck, Inc.*, 952 F.2d 1304, 1310 (11th Cir.1992) (citing decisions on each side and certifying question to state supreme court);

*Shipp v. General Motors Corp.*, 750 F.2d 418, 424 & nn. 6 & 7 (5th Cir.1985).

5. No one has questioned that such evidence exists here.

The *Oakes* court also was persuaded by the Eighth Circuit's insightful discussion of the *Huddell* framework in *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199 (8th Cir.1982) (Lay, C.J.). In *Mitchell*, the Eighth Circuit took direct issue with *Huddell* and the decisions that had followed it, explaining:

> The primary difficulty we have with this analysis is that it forces not only the parties but the jury as well to try a hypothetical case. Liability and damage questions are difficult enough within orthodox principles of tort law without extending consideration to a case of a hypothetical victim. More realistically, the parties and juries should direct their attentions to what actually happened rather than what might have happened.
>
> By placing the burden of proof on a plaintiff to prove that the designer was the sole cause of not only an enhanced indivisible injury, but, in addition, that he would not otherwise have received injuries absent a defect, the injured victim is relegated to an almost hopeless state of never being able to succeed against a defective designer. The public interest is little served.... A rule of law which requires a plaintiff to prove what portion of indivisible harm was caused by each party and what might have happened in lieu of what did happen requires obvious speculation and proof of the impossible. This approach converts the common law rules governing principles of legal causation into a morass of confusion and uncertainty....
>
> The argument is made that since the manufacturer's liability is only for the enhanced injury, without plaintiffs proving that the injury would not have occurred in the first collision, there is no proof of an enhanced injury. The difficulty with this reasoning is that where there is but a single indivisible injury (e.g., death, paraplegia) it requires plaintiffs to rely on pure speculation, since in many instances it is impossible to show which tortfeasor caused the indivisible harm. Such a rule ignores common law principles on legal causation.

*Mitchell*, 669 F.2d at 1204–05.[6] *Mitchell* found that in place of instructions on enhanced injury, the jury should have been told "that if it found the defective design was a substantial factor in producing the paraplegia, the manufacturer would be liable as a joint and several tortfeasor with the driver of the [other] car." *Id.* at 1201–02; *see also id.* at 1206.

The *Oakes* court found *Mitchell*'s reasoning fully consonant with the Illinois Supreme Court's decisions in *Burke* and *Buehler*. 628 N.E.2d at 349.[7] The court accordingly re-

---

**6.** The court continued:
> We conclude the rationale of *Huddell*, at least when related to second injury collision cases involving an indivisible injury, will generally result in complete exoneration of the negligent manufacturer. The novel approach of *Huddell* applied singularly to enhanced injury cases ... leaves an injured victim as little more than a traffic statistic. The *Huddell* rule "flagrantly" violates the fault principle and the objective of compensation.

*Id.* at 1207–08 (citations and internal quotation omitted).

**7.** In *Burke*, the plaintiff was rendered a quadriplegic when he first was injured through the negligent conduct of employees of the defendant Rothschild's Liquor Mart. He was injured further when two Chicago police officers threw him into the rear of a police paddy wagon, causing his head to strike a steel wall. 170 Ill.Dec. at 635, 593 N.E.2d at 524. The City of Chicago argued, as GM does here, that it was a successive tortfeasor and that it should be liable only for the injuries caused by its officers—*i.e.*, the "enhanced injuries." The Illinois Supreme Court held, however, that the City was jointly liable for the entire harm, as the plaintiff's injury, quadriplegia, was indivisible. "The test of jointness," the Illinois Supreme Court said, "is indivisibility of the injury." *Id.* at 637, 593 N.E.2d at 526. Because either or both of the defendants could have caused the indivisible harm, they were jointly liable for it. *Id.*

GM argued in *Oakes*, as it does here, that *Burke* was not a "second collision" or "crashworthiness" case and that its holding would therefore not apply in that context. The Illinois Appellate Court did not find that persuasive, however, as the supreme court had applied similar principles in *Buehler*, which was a crashworthiness case. In *Buehler*, the plaintiffs were injured when their Ford automobile was struck in the rear by another vehicle, damaging the filler spout of the vehicle's gas tank and causing the vehicle to burst into flames, severely burning its occupants. The plaintiffs sued Ford and the driver of the other automobile, and the jury returned a verdict in their favor against both defendants. As *Oakes* explained:
> Our supreme court was asked by defendant Whalen [the other driver] to apportion dam-

jected *Huddell,* finding that its rule did not "accurately reflect the current state of the law in Illinois with respect to concurrent tortfeasor liability in an indivisible injury situation." *Oakes,* 194 Ill.Dec. at 853, 628 N.E.2d at 350. It therefore affirmed the trial court's refusal to instruct the jury on enhanced injury, finding that "the concept of enhanced injury was not an issue in this case." *Id.*

■ We of course are not required to follow *Oakes,* as it is an Illinois Appellate Court decision interpreting state law. *See, e.g., Robinson v. Ada S. McKinley Community Servs., Inc.,* 19 F.3d 359, 363 (7th Cir.1994); *Smith v. Navistar Int'l Transp. Corp.,* 957 F.2d 1439, 1443 (7th Cir.1992). Yet we generally will abide by an intermediate appellate court's interpretation of state law unless we are convinced that the state's highest court would decide the issue differently. *See Hicks v. Feiock,* 485 U.S. 624, 628 n. 3, 108 S.Ct. 1423, 1428 n. 3, 99 L.Ed.2d 721 (1988); *Robinson,* 19 F.3d at 363; *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 574 (7th Cir.1993). We perceive no persuasive indications pointing in the other direction here. Indeed, we are convinced that the *Oakes* decision is completely consistent with both *Burke* and *Buehler,* as the Illinois Appellate Court explained. *See Oakes,* 194 Ill.Dec. at 849–51, 628 N.E.2d at 346–48 (discussing *Burke* and *Buehler* ). We therefore believe that the Illinois Supreme Court would also have rejected GM's enhanced injury theory in *Oakes* had it granted the company's petition for review.

We take from *Oakes* and its adherence to *Mitchell* that in a "second collision" case under Illinois law, the trial court must first determine as a legal matter whether the plaintiff has suffered an indivisible injury or one that is capable of being apportioned to distinct causes. That is the path followed by the trial court in *Oakes,* and the course the Eighth Circuit in *Mitchell* required the district court to follow on remand. *See Mitchell,* 669 F.2d at 1201, 1209 ("The district court under Minnesota law should have ruled as a matter of law that the paraplegic injury was an indivisible one and that the harm could not be apportioned."). Here, as in *Burke, Oakes,* and *Mitchell,* DePaepe's quadriplegia was an indivisible injury that could not reasonably be apportioned between two possible causes—those being the Buick's collision with the other vehicle and the second impact with the allegedly defective sun visor/header, as there was no clear evidence showing that either but not both had caused a distinct portion of the injury. *See Burke,* 170 Ill.Dec. at 637, 593 N.E.2d at 526 (citing Restatement (Second) of Torts § 433A & cmt. i (1965)). The district court should therefore have ruled as a matter of law that DePaepe's injury was indivisible and that it was incapable of apportionment. *See Mitchell,* 669 F.2d at 1209. The court should then have instructed the jury that if it finds the alleged design defect in the GM vehicle to be a substantial factor in producing the plaintiff's quadriplegic injury, it should return a verdict for the plaintiff and assess damages in an amount that fairly compensates DePaepe for that injury. *See Mitchell,* 669 F.2d at 1209–10; *see also Oakes,* 194 Ill.Dec. at 852, 628 N.E.2d at 349.

The instructions here failed to apprise the jury of these governing principles of Illinois law in several important respects. First, the district court utilized the term "enhanced injuries" no less than thirteen times in instructing the jury, but the instructions did not purport to define that term. (*See* Tr. at 2188–98.) *Cf. Heller Int'l Corp. v. Sharp,* 974 F.2d 850, 856–60 (7th Cir.1992) (failure to

---

ages between herself and Ford. The court examined the nature of the respective responsibility of the auto manufacturer whose uncrashworthy design combined with the negligence of a driver who precipitated the collision. The court stated:

"We have here a classic case of concurrent tortfeasors whose separate acts combine to produce a single individual injury. *Under these circumstances there is no apportionment.*"

*Oakes,* 194 Ill.Dec. at 850, 628 N.E.2d at 347 (quoting *Buehler,* 15 Ill.Dec. at 857, 374 N.E.2d at 465 (emphasis added in *Oakes* )). We therefore agree with *Oakes'* conclusion that *Burke* and *Buehler* make clear that the concept of enhanced injury would not apply in Illinois to a case where two tortfeasors combined to produce a single, indivisible harm. *Oakes,* 194 Ill.Dec. at 850–51, 628 N.E.2d at 347–48.

instruct the jury as to meaning of crucial term in fidelity bond left jury with inadequate understanding of the law, requiring a new trial). The district court's use of the term "enhanced injuries" must have conveyed to the jury that DePaepe suffered initial injuries that were "added to" or "made greater" by a subsequent cause, presumably the alleged defect in the GM vehicle.[8] We think this a fairly safe assumption, as the district court instructed the jury that:

> Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the defendant manufacturer would be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

> If you find that the defendant manufacturer is liable to the plaintiff, the manufacturer is in no event liable to compensate the plaintiff for any damages or injuries which would have occurred as a result of the collision, even if the vehicle had been designed as the plaintiff suggests.

(Tr. at 2194.) The district court's repeated use of the term "enhanced injuries," in conjunction with these instructions, which convey the concept of enhanced injury without expressly defining that term, invited the jury to attempt the impossible—to divide and then to apportion between two causes a single, indivisible injury.

Even more importantly, in the burden of proof instruction, the district court instructed the jury that DePaepe was required to show that he "sustained enhanced injuries" and that "the condition of the 1984 Buick Regal was a proximate cause of enhanced injuries to the plaintiff beyond those he would have otherwise sustained in the collision." (Tr. at 2193.) In an indivisible injury case where there was no evidence of possible apportionment, this instruction essentially required DePaepe to prove not only that the alleged design defect was the sole cause of his indi-

visible injuries, but also that he would not otherwise have been injured in the accident absent the defect. *See Oakes,* 194 Ill.Dec. at 852, 628 N.E.2d at 349; *Mitchell,* 669 F.2d at 1204. As we have explained, such a requirement is inconsistent with the joint liability principles that govern indivisible injury cases in Illinois.

■ Anticipating our adherence to *Oakes,* GM argues that even if we were to find error in the enhanced injury instructions, we should nonetheless affirm because the error was harmless. *See* Fed.R.Civ.P. 61; *see also Sokol Crystal Prods., Inc. v. DSC Communications Corp.,* 15 F.3d 1427, 1434 (7th Cir. 1994) (federal harmless error standard applies in diversity cases); *Simmons, Inc. v. Pinkerton's, Inc.,* 762 F.2d 591, 597 & n. 2 (7th Cir.1985) (same). Our review of jury instruction issues is indeed limited. We must " 'proceed cautiously when asked to set aside a jury's verdict and order a new trial ... on the ground that the instructions contained erroneous or confusing passages.' " *Littlefield v. McGuffey,* 954 F.2d 1337, 1344 (7th Cir.1992) (quoting *Needham v. White Lab., Inc.,* 847 F.2d 355, 360 (7th Cir.1988)); *see also United States v. Dack,* 987 F.2d 1282, 1284 (7th Cir.1993). In considering whether a new trial is warranted, we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law. *Patel v. Gayes,* 984 F.2d 214, 218–19 (7th Cir.1993); *see also Dack,* 987 F.2d at 1284 (we "look for overall fairness and accuracy"). "[I]nadequate jury instructions are cause for reversal only if it appears that the jury's comprehension of the issues was so misguided that one of the parties was prejudiced." *Walsh v. Emergency One, Inc.,* 26 F.3d 1417, 1420 (7th Cir.1994); *see also Littlefield,* 954 F.2d at 1344; *Goldman v. Fadell,* 844 F.2d 1297, 1302 (7th Cir.1988). Yet when the instructions as a whole " 'give the jury a misleading impression or inadequate understanding of the law, a new trial is warranted.' " *Heller Int'l Corp.,* 974 F.2d at 856 (quoting *Carvel Corp. v. Diversified Manage-*

---

**8.** The verb "enhance" means "to add or contribute to" (*Webster's Ninth New Collegiate Dictionary* 413 (1985)), and *Black's Law Dictionary* 529 (6th ed. 1990) defines "enhanced" as "[m]ade greater."

*ment Group, Inc.,* 930 F.2d 228, 232 (2d Cir.1991)).

In this diversity case, we look to Illinois law in assessing the substance of the challenged jury instructions. *Felder v. Casey,* 487 U.S. 131, 151, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988); *Patel,* 984 F.2d at 218; *Littlefield,* 954 F.2d at 1344. In light of the foregoing discussion of that state's law, we have considerable difficulty with GM's contention that the "enhanced injury" instructions here caused DePaepe no prejudice, making a new trial unwarranted. *Oakes* held that a jury should not be instructed on enhanced injury in a case such as this one. 194 Ill.Dec. at 853, 628 N.E.2d at 350. Moreover, the Eighth Circuit in *Mitchell* found "plain error affecting the integrity of the trial and the verdict" where the jury was instructed on enhanced injury in an indivisible injury case. 669 F.2d at 1209. Such error was evident, the Eighth Circuit said, because the instructions required the jury to "speculate about how to apportion an injury that is not capable of apportionment." *Id.* The same error infected the trial and verdict here, and we are unable to say that DePaepe was not prejudiced.

Although the jury's general verdict for GM could be interpreted as a finding that there was no unreasonably dangerous condition or defect in the vehicle, it is equally plausible that the jury's verdict reflects its finding that DePaepe failed to prove enhanced injuries beyond those he otherwise would have sustained in the collision. (*See* Tr. at 2193.) The jury was instructed, after all, that if DePaepe failed to meet his burden of proof on that issue, it should enter a verdict for GM. (*Id.* at 2193–94.)[9] But under Illinois

law, DePaepe is not required to make such a showing; he need show only that GM's allegedly defective sun visor/header design was a substantial factor in producing his indivisible injury. The instructions here thus failed to provide the jury with a complete understanding of the applicable law, and indeed, they imposed independent burdens on the plaintiff that have been rejected by the Illinois courts. We therefore cannot say with any degree of certainty that the instructional errors were harmless. *See Simmons, Inc.,* 762 F.2d at 599 n. 3 (in a case where the jury could have based its decision on a valid or an invalid theory, we cannot speculate as to which the jury chose); *cf. Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898, 901 (7th Cir. 1994) (remanding for new trial where jury verdict for the plaintiff in a vehicle defect case could have been based on an improper legal theory). DePaepe is therefore entitled to a new trial in which the concept of enhanced injury plays no part.

## B. Seat Belt Evidence

■ DePaepe also alleges error in the admission of evidence that his automobile was equipped with a functional restraint system. Although the district court admitted this evidence only on the limited issue of the vehicle's crashworthiness, DePaepe argues that the evidence conveyed to the jury, in contravention of Illinois law, that he was not wearing his seat belt at the time of the accident. Because this issue will no doubt recur on retrial, we address it briefly here.

DePaepe moved *in limine* to exclude any reference to the availability of seat belts in the Buick or to the fact that he was not

---

**9.** Indeed, in convincing the district court to include the concept of enhanced injury in its instructions to the jury, GM's counsel argued:

There was no testimony in this case to establish what Mr. DePaepe's injuries would have been given [the plaintiff's expert's proposed alternative] design, whatever that design may be. *That is the testimony they need in order to sustain their burden of proving enhanced injuries in this crashworthiness case.*

The jury needs to know about enhanced injuries and the concept of enhanced injuries *because they could find that the plaintiff failed to sustain [its] burden of proving enhanced injuries*

*in this case.* For that reason and because enhanced injuries [are] the essence of [a] crashworthiness case, we believe it's a proper issue in the case and in the jury instructions. (Tr. at 2048 (emphasis added).) And the following day, after DePaepe had moved for judgment as a matter of law (*see supra,* at 739 n. 3), GM's counsel observed that the court already had heard extended argument on the enhanced injury issue and had concluded "that indeed enhanced injury is not only an issue, but perhaps *the* issue in this case." (Tr. at 2120 (emphasis added).) That ruling was wrong as a matter of law, and as counsel's own comments indicate, the error was in no sense harmless.

wearing his seat belt at the time of the accident. The district court granted the motion in part, holding pursuant to 625 ILCS 5/12–603.1(c), that GM was precluded from introducing evidence of DePaepe's failure to wear his seat belt for the purpose of establishing his comparative fault or of reducing his damages. (R. 78.) The court, however, allowed GM to show that its vehicle was equipped with a functional restraint system as part of its overall design. (*Id.*) Thus, when reference was made at trial to the vehicle's restraint system, the court instructed the jury as to the limited use of that evidence:

> You may consider the fact that plaintiff's 1984 Buick Regal was equipped with functional seat belts in accordance with federal and Illinois law for the purpose of determining whether the overall design of the vehicle was reasonably crashworthy. However, you may not consider plaintiff's use or non-use of seat belts in determining, one, whether the plaintiff was at fault for his own injuries and/or, two, whether plaintiff's use or non-use of his seat belt caused his injury. Illinois law in 1984 did not require the use of seat belts.

(*See, e.g.,* Tr. at 1672.) The court repeated this admonition in instructing the jury at the close of the case. (*Id.* at 2194.) DePaepe nonetheless argues that any evidence relating to the vehicle's restraint system should have been excluded pursuant to the Illinois seat belt statute:

> (c) Failure to wear a seat safety belt in violation of this Section shall not be considered evidence of negligence, shall not limit the liability of an insurer, and shall not diminish any recovery for damages arising out of the ownership, maintenance, or operation of a motor vehicle.

625 ILCS 5/12–603.1(c).

We addressed a similar argument under North Carolina law in *Barron v. Ford Motor Co. of Canada, Ltd.,* 965 F.2d 195 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 605, 121 L.Ed.2d 541 (1992). That case, like this one, involved a vehicle's crashworthiness—in particular, Ford's use of tempered rather than laminated glass in a sunroof, which, according to the plaintiff, caused her to be thrown through the sunroof in a roll-over accident. The district court admitted evidence that the Ford vehicle was equipped with a functional restraint system, which had the effect of also conveying to the jury that Barron was not wearing a seat belt at the time of the accident. Yet we emphasized that that was not the primary purpose of the seat belt evidence:

> Ford's point was merely that the provision of seatbelts was a part of the automobile's overall restraint system, so that the reasonableness of making the sunroof of tempered rather than of laminated glass was a function in part of the other steps Ford had taken to prevent occupants from being flung out.

965 F.2d at 198. *Barron* found the restraint system evidence relevant to Ford's effort to show that its vehicle design was not defective (*id.* at 200), but the more difficult question was whether the evidence, even if relevant, violated North Carolina's seat belt rule, which would apply in a diversity case governed by that State's law. *Id.* at 200–01; *see also id.* at 202 (Ripple, J., concurring) (seat belt rule is substantive, and not procedural, meaning that it applies in diversity case).[10] We found that it did not, explaining that the North Carolina rule does not preclude all seat belt evidence, but only evidence of non-use in assessing whether the plaintiff had been negligent in failing to mitigate the consequences of her accident. *Id.* at 199–200. Because the evidence in *Barron* was not introduced for that purpose, it did not run afoul of North Carolina's seat belt rule. *Id.* at 200.

Assuming that North Carolina and Illinois law are consistent on this point, *Barron* provides compelling support for the district court's handling of GM's restraint system evidence below. As in *Barron,* GM's purpose here was not to show that DePaepe had

---

**10.** North Carolina's common law seat belt rule indicated that evidence of the failure to wear a seat belt is inadmissible in any civil action. *See Barron,* 965 F.2d at 198 (citing *Hagwood v. Odom,* 88 N.C.App. 513, 364 S.E.2d 190, 191–92 (1988)). The rule has since been codified in an expanded form. *See* N.C.Gen.Stat. § 20–135.-2A(d).

himself been negligent in the hopes of diminishing his recovery in some way. Instead, GM wished to show that its design of the sun visor/header was not unreasonably dangerous because the vehicle also was equipped with a functional restraint system that would prevent an occupant from striking those components in an accident. *See Barron,* 965 F.2d at 200. The court's instruction reinforced the limited purpose of this evidence, and we must assume that the jury followed its instructions. *See Sokol Crystal Prods.,* 15 F.3d at 1433.[11]

Yet DePaepe argues that Illinois' restriction on seat belt evidence is even broader than the North Carolina rule we considered in *Barron.* He points to the Illinois Supreme Court's statement in *Clarkson v. Wright,* 108 Ill.2d 129, 90 Ill.Dec. 950, 952, 483 N.E.2d 268, 270 (1985), that seat belt evidence "should not be admitted with respect to either the question of liability or damages," and maintains that the district court admitted the evidence on the liability question here. But we do not read *Clarkson* or the Illinois seat belt statute to foreclose the admission of GM's evidence. Like North Carolina's rule, the Illinois seat belt statute is directed to the contention that a plaintiff was himself negligent in failing to utilize the vehicle's restraint system. *See, e.g., Dunn v. Baltimore & Ohio R.R. Co.,* 127 Ill.2d 350, 130 Ill.Dec. 409, 415–16, 537 N.E.2d 738, 744–45 (1989); *Harnischfeger Corp. v. Gleason Crane Rentals, Inc.,* 223 Ill.App.3d 444, 165 Ill.Dec. 770, 779, 585 N.E.2d 166, 175 (1991). It was therefore not intended to preclude evidence that a vehicle was equipped with a functional restraint system for the purpose of showing that the overall design of the vehicle was reasonably crashworthy. *See Whitehead v. American Motors Sales Corp.,* 801 P.2d 920, 928 (Utah 1990) (finding seat belt evidence admissible under similar Utah statute on the question of the vehicle's overall design).

Although we have found no Illinois decision addressing such a limited use of seat belt evidence, there are cases applying Illinois law where restraint system evidence was admitted in spite of the Illinois seat belt statute. *See, e.g., Walsh,* 26 F.3d at 1420 (seat belt evidence going to defect issue not assigned as error, as the plaintiff "concedes that [the manufacturer] could present this evidence to try to persuade the jury that, because the truck had seat belts in the unenclosed area, the truck was not unreasonably dangerous."); *Oakes,* 628 N.E.2d at 347, 348 (seat belt evidence admitted in case involving allegedly defective seatback). We are persuaded that the Illinois Supreme Court would approve the limited admission of such evidence notwithstanding *Clarkson* and 625 ILCS 5/12–603.1(c). *Cf. Whitehead, supra; Lowe v. Estate Motors Ltd.,* 428 Mich. 439, 410 N.W.2d 706, 720 (1987) ("the jury should be permitted to consider evidence concerning the seat-restraint system, along with all other relevant factors, in determining whether the vehicle was defective in design"); *Siren v. Behan,* 224 N.J.Super. 130, 539 A.2d 1244, 1248–49 (App.Div.1988) (existence of restraint system relevant to New Jersey's risk-utility analysis of alleged defect); *see also LaHue v. General Motors Corp.,* 716 F.Supp. 407, 417–18 (W.D.Mo.1989) (existence of seat belts relevant to whether overall design is defective and unreasonably dangerous); *Jordan v. General Motors Corp.,* 624 F.Supp. 72 (E.D.La.1985) (same); *Wilson v. Volkswagen of Am., Inc.,* 445 F.Supp. 1368, 1371 (E.D.Va. 1978) (same). On retrial, therefore, the district court should again permit GM to show that DePaepe's Buick was equipped with a functional restraint system, and should again instruct the jury of the limited purpose of that evidence.

## III. CONCLUSION

The record demonstrates that this was a close and hard-fought trial that ended, after three weeks, in a unanimous jury verdict

---

11. To the extent DePaepe argues that the evidence was excessively prejudicial because it conveyed to the jury that he was not belted, we agree with GM that the jury knew this anyway, as the evidence at trial established that DePaepe was thrown into the sun visor/header on impact and was later found on the floor of his vehicle. Absent an allegation of seat belt failure, the jury would naturally assume from those facts that DePaepe was not belted. We therefore cannot agree that the seat belt evidence was excessively prejudicial.

absolving General Motors of any responsibility for Kenneth DePaepe's tragic injuries. Mindful of the need to conserve judicial resources, we always hesitate to overturn such a verdict and order a second trial. Yet we are convinced that by instructing the jury on the concept of enhanced injury where the undisputed evidence established a single, indivisible harm, the district court required DePaepe to shoulder a burden that is inconsistent with Illinois law. The court's instructions required the jury to return a verdict for General Motors even if it found an unreasonably dangerous condition, on the basis that DePaepe had failed to show that his injury had been enhanced by the alleged defect, or that he would not have suffered a similar injury absent the defect. Because the instructions permitted the jury to return a verdict for General Motors on an improper ground, we cannot dismiss the error as harmless. We accordingly reverse and remand for a new trial consistent with this opinion. Circuit Rule 36 shall not apply.

REVERSED AND REMANDED.