Ana Ilsen CARRASQUILLA and Olga Lucia Laprade, as Co–Administratrices of the Estate of Argenix Suarez, deceased; Marco Carrasquilla; and Ana Ilsen Carrasquilla, Plaintiffs

v.

MAZDA MOTOR CORP., a/k/a Mazda Motors Corp,; Mazda (North America), Inc.; and Mazda Motor of America, Inc., Defendants

v.

Mark Thompson, Third–Party Defendant

No. 4:CV–96–2240.

United States District Court, M.D. Pennsylvania.

April 22, 2002.

Clifford A. Rieders, John M. Humphrey, Pamela L. Shipman, Rieders Travis Humphrey Harris, Waters & Waffenschmidt, Williamsport, PA, for plaintiffs.

Joseph E. O'Neil, Francis J. Grey, Jennifer M. Brooks, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

By order dated September 25, 2001, we dismissed as preempted by federal law

plaintiffs' claim based upon defendants' choice of restraint system consisting of a two-point passive shoulder belt and a manual lap belt. In that same order, we denied defendants' motion for summary judgment as to claims that "(1) the Protégé was negligently designed and defective in design in that it lacked an adequate seat back, seat track mechanism and knee bolster; and (2) [that] defendants failed to warn adequately of the risk of harm associated with the lack of an adequate seat back, seat track mechanism and knee bolster." *See* Order # 1.

Also on September 25, 2001, we denied defendants' motion *in limine* to permit evidence related to the existence of manual lap belts as part of the Protégé's available restraint system and their lack of use by the car's occupants. *See* Order # 2.

Defendants subsequently moved for clarification of the court's orders of September 25, 2001.

On October 25, 2001, plaintiffs filed a motion *in limine* to adopt the burden of proof for a crashworthiness case as adopted in *Stecher v. Ford Motor Co.*, 779 A.2d 491 (Pa.Super.2001), *appeal granted by* 792 A.2d 1254, 2001 WL 1630213 (Pa. Dec.19, 2000) (TABLE, NO. 662). The motion was fully briefed.

By order dated December 19, 2001, defendants' motion for clarification was denied. There, we ruled that plaintiffs' claim that the Protégé was negligently designed and defective in design in that it lacked an adequate knee bolster does not present a challenge to a restraint system option available to defendants under FMVSS 208 and, therefore, is not preempted. *Cf. Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000). We deferred for another time our ruling on defendants' challenge to the constitutionality of the Pennsylvania's Occupant Protection Act, 75 Pa. Con. Stat. Ann.

§ 4581(e) as applied to the instant case. Defendants were granted leave to file an additional motion *in limine* addressing the sufficiency of the evidence in support of plaintiffs' knee bolster claim and/or defendants' argument that Pennsylvania's Occupant Protection Act is unconstitutional as applied.

On January 14, 2002, defendants filed a motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters in the Protégé and to preclude application of Pennsylvania's seat belt statute as unconstitutional. The motion was fully briefed.

By order dated March 20, 2002, pursuant to 28 U.S.C. § 2403(b), the court certified to the Attorney General of the Commonwealth of Pennsylvania that the constitutionality of Pennsylvania's Occupant Protection Act is drawn in question with respect to plaintiffs' crashworthiness claim, and provided the Attorney General with notice of its statutory right to intervene. The Attorney General's office subsequently notified the court that it would not be entering an appearance or intervening in this action.

Set forth below is the court's ruling on the aforementioned motions *in limine*.

**DISCUSSION:**

### I. BURDEN OF PROOF IN CRASHWORTHINESS CASES

We note from the outset that this case raises difficult issues relating to a federal court's duties to interpret state law.

Plaintiffs filed a motion *in limine* on October 25, 2001, requesting that the court adopt as the law of the Commonwealth of Pennsylvania the so-called *Fox–Mitchell* rule—recently adopted by the Pennsylvania Superior Court in *Stecher v. Ford Motor Co.*, 779 A.2d 491 (Pa.Super.2001), *ap-*

*peal granted by* 792 A.2d 1254, 2001 WL 1630213 (Pa. Dec.19, 2000) (TABLE, NO. 662)—as it pertains to the burden of proof in the context of the instant crashworthiness case.

Defendants, on the other hand, contest the adoption of *Stecher* on the grounds that it essentially overrules a prior decision of the same court (*e.g., Kupetz v. Deere & Co.,* 435 Pa.Super. 16, 644 A.2d 1213 (1994) (finding enhanced injury doctrine a permissible theory of recovery in Pennsylvania)), and contravenes basic principles of Pennsylvania tort law. Additionally, defendants submit that we should not adopt *Stecher* as a prediction of Pennsylvania law given *Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976), which set forth a burden of proof in crashworthiness cases different from that set forth in *Stecher.*

### A. Prediction Of State Law In Federal Court

■ It is axiomatic that a federal court sitting in diversity must apply state substantive law and federal procedural law. *Chamberlain v. Giampapa,* 210 F.3d 154, 158 (3d Cir.2000) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). *See also Walsh v. Strenz,* 63 F.Supp.2d 548, 551 (M.D.Pa. 1999) ("A federal court sitting with diversity jurisdiction applies the law of the state whose law governs the action, *Greater New York Mutual Insurance Co. v. North River Ins. Co.,* 85 F.3d 1088, 1091 (3d Cir.1996), which generally is the law of the forum state. *Clark v. Modern Group, Ltd.,* 9 F.3d 321, 326 (3d Cir.1993)[ ]."). In this case, it is undisputed that Pennsylvania law applies.

■ "The federal court may not impose its view of what the state law should be, but must apply existing state law as interpreted by the state's highest court in an effort to determine how the state court would decide the precise legal issue before the federal court." *Walsh,* 63 F.Supp.2d at 551 (citing *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.,* 98 F.3d 1440, 1445 (3d Cir.1996)). In the absence of a reported decision by the state's highest court addressing the precise issue before it, a federal court applying state substantive law must predict how the state's highest court would rule if presented with the case. *See Nationwide Mutual Ins. Co. v. Buffetta,* 230 F.3d 634, 637 (3d Cir.2000) (citation omitted). The standard used by a federal court when predicting how the state's highest court would rule on the issue is as follows:

> [T]he federal court must look to decisions of any intermediate state appellate court, other federal courts interpreting the law of the state, and other state supreme courts that have decided the issue, as well as analogous decisions, dicta, scholarly works, and any other reliable data which would tend to show convincingly how the state's highest court would rule.

*Walsh,* 63 F.Supp.2d at 551 (citing *Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 189 (3d Cir.1998); *Koppers Co., Inc.,* 98 F.3d at 1445). *See also McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 663 (3d Cir. 1980). "Intermediate appellate court decisions are given 'significant weight' in the absence of any indication that the state's highest court would rule otherwise." *Walsh,* 63 F.Supp.2d at 551 (citation omitted).

■ It is clear that in general, a federal court applying state law, when faced with an absence of state supreme court precedent, must predict how the state supreme court would decide the issue before it. As we pointed out in our recent opinion in *Hittle v. Scripto–Tokai Corp.,* "[l]ess clear, however, is the extent to which a federal district court is bound by its court of ap-

peals' interpretation of state law, especially if a subsequent state appellate court contradicts the federal appellate court." 166 F.Supp.2d 159, 162 (M.D.Pa.2001). There, we stated that:

> The Third Circuit has not given very much guidance on the subject, but has suggested that the only law that is binding on a federal court is the jurisprudence of the state supreme court, and that even a decision by a federal court of appeals does not bind a district court. *See, e.g., Aceto v. Zurich Insurance Co.,* 440 F.2d 1320, 1321 (3d Cir.1971) ("No one may properly rely upon what we have held as more than persuasive on a question of Pennsylvania law so long as the Supreme Court has not ruled upon that legal question."); *but see Lennig v. New York Life Insurance Co.,* 130 F.2d 580, 581 (3d Cir.1942) (indicating that where a federal court of appeals interprets state law, a district court is bound by that interpretation at the retrial of the case unless it is clear by subsequent statute or binding state court decision that the court of appeals erred). District courts in this circuit have been inconsistent, but it has been written that a district court is bound by its court of appeals on questions of state law unless 'later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error.' *Stepanuk v. State Farm Mutual Automobile Insurance Co.,* No CIV. A. 92–6095, 1995 WL 553010, at *2 (E.D.Pa. September 19, 1995) (collecting cases).

*Id.* Presented with the state court decision of *Stecher,* "we will assume without deciding, that we are *not* strictly bound" by the Third Circuit's holding in *Huddell,* and

are, therefore, "free to make a contrary prediction." *Hittle,* 166 F.Supp.2d at 162.

### B. Huddell

In *Huddell v. Levin,* 537 F.2d 726 (3d Cir.1976), the United States Court of Appeals for the Third Circuit explained that in an enhanced injury or crashworthy case, a plaintiff must prove: (1) that a practicable alternative, safer design existed; (2) what injuries, if any, would have resulted if the alternative, safer design had been used; and (3) some method of establishing the extent of the enhanced injuries attributable to the defective design. *See id.* at 737–38. There, the court was predicting New Jersey law.

The *Huddell* approach "has been followed by the Third Circuit and the district courts within Pennsylvania when predicting Pennsylvania Law." *Stecher,* 779 A.2d at 496, n. 13 (citing *Oddi v. Ford Motor Co.,* 234 F.3d 136 (3d Cir.2000), *cert. denied,* 532 U.S. 921, 121 S.Ct. 1357, 149 L.Ed.2d 287 (2001); *Dorsett v. American Isuzu Motors, Inc.,* 805 F.Supp. 1212 (E.D.Pa.1992), *aff'd without opinion,* 977 F.2d 567 (3d Cir.1992); *Craigie v. General Motors Corp.,* 740 F.Supp. 353 (E.D.Pa. 1990)). Several other circuits have followed this approach, referred to as the *Huddell/Caiazzo* approach. The *Huddell/Caiazzo* approach "requires a plaintiff to quantify the extent of his or her injuries that were caused by the defect and permits recovery from the manufacturer of the product that allegedly enhanced the injures only for the precise injuries caused by the defective product." *Stecher,* 779 A.2d at 496 (citing *Huddell,* 537 F.2d at 738); *see also Caiazzo v. Volkswagenwerk A.G.,* 647 F.2d 241 (2d Cir.1981).[1]

---

1. According to *Stecher,* "[the *Huddell/Caiazzo* approach] has been followed or supported by at least one other circuit court predicting the law of two states and by the appellate courts of at least seven other states." 779 A.2d at 496 n. 11 (citing *Chretien v. General Motors Corp.,* 959 F.2d 231, 1992 WL 67356 (4th Cir.1992) (applying Virginia law); *Stonehock-*

It is the approach articulated in *Huddell*, along with *Oddi*, 234 F.3d 136, and *Kupetz*, 435 Pa.Super. 16, 644 A.2d 1213, that defendants request the court adopt as the burden of proof in this case. We will, however, decline to do so. After review of the standard for predicting state law in federal court, we believe the Pennsylvania Superior Court's decision in *Stecher* is not controlling, but must be accorded substantial weight.

## C. Stecher

In *Stecher*, the Superior Court of Pennsylvania addressed the precise issue of the allocation of the burden of proof of an enhanced injury claim. 779 A.2d at 494. The court noted that "this specific question is an issue of first impression in the appellate courts of Pennsylvania." *Id.*[2]

Essentially, *Stecher* eased the burden of proof for plaintiffs in crashworthiness cases, departing specifically from the aforementioned *Huddell/Caiazzo* approach. The court adopted, instead, the so-called *Fox/Mitchell* approach toward allocation of the burden of proof in enhanced injury cases which "requires a plaintiff to prove only that a defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision." *Stecher*, 779 A.2d at 495, n. 8 (quoting *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1206 (8th Cir.1982); citing *Fox*

v. *Ford Motor Co.*, 575 F.2d 774 (10th cir.1978)). Once a plaintiff is able to meet his burden of proof, " 'the burden of proof shifts to the tortfeasors to apportion the damages between them.' " *Stecher*, 779 A.2d at 495 (citing *Trull v. Volkswagen of America, Inc.*, 145 N.H. 259, 761 A.2d 477, 481 (2000)). "If the defect 'is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors.' " *Id.* (quoting *Mitchell*, 669 F.2d at 1206).

The *Stecher* court set forth the rationale behind the *Fox/Mitchell* approach as follows:

> This placement of the burden of proof is justified by considerations of fairness. If we were to impose upon an injured party the necessity of proving which impact in a chain collision did which harm, we would actually be expressing a judicial policy that it is better that a plaintiff, injured through no fault of his own, take nothing, than that a wrongdoer pay more than his theoretical share of the damages arising out of a situation which his wrong has helped to create. In other words, the rule is a result of a choice made as to where a loss due to failure of proof shall fall—on an innocent plaintiff or on defendants who are clearly proved to have been at fault.

er v. *General Motors Corp.*, 587 F.2d 151 (4th Cir.1978) (predicting South Carolina law); *Mazda Motor Corp. v. Lindahl*, 706 A.2d 526 (Del.1998); *Hillrichs v. Avco Corp.*, 478 N.W.2d 70 (Iowa 1991); *Lopez v. General Motors Corp.*, 224 Mich.App. 618, 569 N.W.2d 861 (1997); *Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 779 (Ct.App.1983), *overruled on other grounds, Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 902 P.2d 54 (1995); *Garcia v. Rivera*, 160 A.D.2d 274, 553 N.Y.S.2d 378 (N.Y.App.Div.1990); *Murphey v. Georgia Pacific Corp.*, 331 N.C. 702, 417

S.E.2d 460 (1992); *Couch v. Mine Safety Appliances, Co.*, 107 Wash.2d 232, 728 P.2d 585 (1986)).

**2.** The court acknowledged that, although *Schroeder v. Pennsylvania Dep't of Transp.*, 551 Pa. 243, 710 A.2d 23 (1998) "cited to *Kupetz* in a footnote for the elements of an enhanced injury claim, *the specific issue of the allocation of the burden of proof was not before the [c]ourt.*" *Stecher*, 779 A.2d at 494 (emphasis added).

*Stecher,* 779 A.2d at 496 (quoting *Mitchell,* 669 F.2d at 1208).

The majority of jurisdictions to consider the issue at hand have adopted the *Fox/Mitchell* approach. *Stecher,* 779 A.2d at 495.[3] Moreover, the *Fox/Mitchell* approach is reflected in the Restatement (Third) of Torts, Section 16, providing:

§ 16. Increased Harm Due to Product Defect

(a) When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the Plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm.

(b) If proof supports a determination of the harm that would have resulted from other causes in the absence of the product defect, the product seller's liability is limited to the increased harm attributable solely to the product defect.

(c) If proof does not support a determination under Subsection (b) of the harm that would have resulted in the absence of the product defect, the product seller is liable for all of the plaintiff's harm attributable to the defect and other causes.

*Stecher,* 779 A.2d at 495–96 (quoting Restatement (Third) Torts, § 16 (2000)).

Defendants argue that the Third Circuit in *Roe v. Deere & Co., Inc.,* 855 F.2d 151, 153 n. 2 (3d Cir.1988) predicted previously that the *Huddell* approach to the burden of proof in crashworthiness cases would be adopted by the Pennsylvania Supreme Court. *See* Defendant's Brief in Opposition to Plaintiff's Motion *in Limine* (rec-

ord doc. no. 477) at 3. *Roe* did mention that "the crashworthiness doctrine as articulated in *Huddell v. Levin* is applicable to cases governed by Pennsylvania law." 855 F.2d at 153 n. 2 (citation omitted). However, the court pointed out that the doctrine had not been affirmed by the Pennsylvania Supreme Court. *Id.* Indeed, rather than making a clear prediction of Pennsylvania law, *Roe* merely referenced a Pennsylvania Superior Court opinion that did not adopt specifically the *Huddell* crashworthiness doctrine, but suggested that the doctrine was not "incompatible with Pennsylvania law." *Id.*

■ Even assuming *Roe* did predict that the Pennsylvania Supreme Court would adopt the *Huddell* approach, the statement of the United States District Court for the Eastern District of Pennsylvania that a district court is bound by its court of appeals on questions of state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error," *see Stepanuk,* 1995 WL 553010, at *2, provides additional support for our adoption of the approach articulated in *Stecher.* Specifically, *Stecher* stated that "the *Fox/Mitchell* approach toward allocation of the burden of proof in enhanced injury cases is more consistent with Pennsylvania tort law than the *Huddell/Caiazzo* approach." 779 A.2d at 496. Although the court in *Huddell* was predicting New Jersey law, the aforementioned statement suggests that any prediction by the Third Circuit that the Pennsylvania Supreme Court will adopt the *Huddell* approach would be in error.[4]

Defendants contend further that *Stecher* is of minimal value because it conflicts with

---

3. "In addition to the United States Court of Appeals for the Eighth and Tenth Circuits, at least three other circuit courts, predicting state law in the absence of controlling precedent, and the appellate courts of at least 20

states either have adopted this approach explicitly or expressed a consistent rationale." *Id.* n. 10 (collecting cases).

4. The Third Circuit in *Oddi,* 234 F.3d 136, recited the elements of a plaintiff's burden of

*Kupetz.* Specifically, defendants argue that *Stecher*'s rejection of the *Huddell* crashworthiness doctrine impermissibly overrules the decision of the Pennsylvania Superior Court in *Kupetz* which, according to defendants, adopted that very doctrine. In so arguing, defendants cite to our opinion in *Hittle* where we stated that "a panel of the Superior Court is not permitted to overrule the precedent of a previous panel of the Superior Court." 166 F.Supp.2d at 166 (citing *Commonwealth v. Cooper,* 710 A.2d 76, 79–80 (Pa.Super.1998)) (further citation omitted); Defendants' Brief in Opposition to Plaintiffs' Motion *in Limine* at 3. We find this contention to be without merit.

*Stecher* in no way overrules *Kupetz.* In fact, *Stecher* points out specifically that *Kupetz* did not involve the precise burden of proof issue at hand:

> In *Kupetz,* [the Superior Court of Pennsylvania] endorsed the enhanced injury doctrine as a 'permissible theory of recovery in this Commonwealth.' *Kupetz,* 644 A.2d at 1219. In so doing, we quoted the elements necessary to recover under this doctrine from two decisions from the United States District Court for the Eastern District of Pennsylvania that followed the ... Third Circuit's decision in *Huddell v. Levin,* 537 F.2d 726[ ]. *[Kupetz,* 644 A.2d] at 1218. In *Kupetz,* however, [the Superior Court of Pennsylvania] affirmed the judgment in a case where a jury trial resulted in a defense verdict. Thus, [the court] did not have the occasion in *Kupetz* to consider the burden of proof regarding allocation of damages.

*Stecher,* 779 A.2d at 494.

■ Given the foregoing, we find that there exists no indication that the Pennsyl-

vania Supreme Court would rule contrary to *Stecher;* thus, we afford *Stecher* "significant weight," and will adopt it as the law of the Commonwealth as applicable to the instant case. *See Polselli v. Nationwide Mutual Fire Ins. Co.,* 126 F.3d 524, 529 n. 3 (3d Cir.1997). Accordingly, plaintiffs' motion *in limine* requesting we adopt the *Fox/Mitchell* approach with respect to the burden of proof in crashworthiness cases adopted in *Stecher* will be granted.

## II. DEFENDANTS' MOTION IN LIMINE

On January 14, 2002, defendants filed a motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters in the subject Mazda Protégé, and to preclude application of Pennsylvania's seat belt statute as unconstitutional. We address each request below.

### A. Pennsylvania's Occupant Protection Act, 75 Pa. Con. Stat. Ann. § 4581

The time has now come for the court to consider, once again, defendants' challenge to the constitutionality of Pennsylvania's Occupant Protection Act, 75 Pa. Con. Stat. Ann. § 4581 as applied. The court construes defendants' motion *in limine* as one requesting the admission of evidence at trial regarding the existence of manual lap belts in the subject Protégé, as well as that the plaintiffs were unbelted at the time of the accident. Defendants argue that § 4581(e), as applied, deprives them of their rights to equal protection and due process.

### 1. Evidence Of Seat Belt Non–Use

■ The Occupant Protection Act, found in the Pennsylvania's Vehicle Code, provides in relevant part:

---

proof in a crashworthiness case under Pennsylvania law as adopted by *Huddell.* *Id.* at 143 n. 10 (citing *Huddell* in footnote). *Oddi*

did not, however, predict how the Pennsylvania Supreme Court would rule on the burden of proof issue.

(a)(2) [E]ach driver and front seat occupant of a passenger car .... operated in this Commonwealth shall wear a properly adjusted and fastened safety seat belt system.

. . . . .

(e) In no event shall a violation or alleged violation of this subchapter be used as evidence in a trial of any civil action; ... *nor shall failure to use a ... safety seat belt system be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil action.*

75 Pa. Cons.Stat. Ann. § 4581(a), (e) (emphasis added). As we noted in our Memorandum # 2 of September 25, 2001, this provision prevents a violation of the statute—*i.e.,* failure to wear "a properly adjusted and fastened seat belt system," 75 Pa. Cons.Stat. Ann. § 4581(a)(2)—"to be used as evidence, and prohibits juries from being instructed that any conduct did constitute or could be considered by them to constitute a violation of the statute." *Nicola v. Nicola,* 449 Pa.Super. 293, 673 A.2d 950, 951 (1996). The prohibitions under subsection (e) stated above, "are directed to any occupant of a vehicle, regardless of their seating." *Id.* This means that the statute applies to both front and rear seat passengers. *Id.*

The plain language of § 4581 mandates that its literal meaning be applied. Accordingly, we reiterate our holding that evidence pertaining to the failure of Marco Carrasquilla and Argenix Suarez to utilize the manual lap belt available in the Mazda Protégé at issue must be excluded. Given the holding in *Nicola,* 673 A.2d 950, evidence of the failure of the rear seat passenger, Ana Carrasquilla, to wear her seat belt, must likewise be excluded.

Defendants' motion *in limine* with respect to evidence of seat belt non-use by the plaintiffs at the time of the accident will be denied.

### 2. Evidence Of The Existence Of Manual Lap Belts

In our prior Memorandum # 2 of September 25, 2001, we excluded on relevancy and public policy grounds evidence of the existence of the manual lap belts in the subject Protégé. Upon reconsideration, our position has changed.

The change in our previous holding is due, in large part, to the complexity of the law and facts of the case with respect to the issues remaining in the context of plaintiffs' crashworthiness claim. We acknowledge that we did not lend proper credence to defendants' initial argument that evidence of the existence of a functional restraint system—including reference to the manual lap belts—in the subject Protégé is relevant to defendants' ability to establish that the vehicle was not defective in design.

Specifically, we improperly found as unpersuasive two Seventh Circuit cases cited by defendants dealing with seat belt statutes similar to Pennsylvania's § 4581(e), *DePaepe v. General Motors Corp.,* 33 F.3d 737 (7th Cir.1994) and *Barron v. Ford Motor Co. of Canada Ltd.,* 965 F.2d 195 (1992).

The United States Court of Appeals for the Seventh Circuit in *Barron,* 965 F.2d 195, addressed North Carolina's seat belt statute as presented in the context of a case involving a vehicle's crashworthiness. There, plaintiff claimed that Ford's use of tempered, rather than laminated, glass in a sunroof caused her to be ejected through the sunroof during a roll-over accident. The court found restraint system evidence relevant to Ford's attempt to show that its vehicle as designed was not defective. *Id.* at 200. Furthermore, the court went on to

note that such evidence did not violate North Carolina's seat belt rule since it was not admitted to show failure of the plaintiff to wear her seat belt. *Id.*

Similarly, in *DePaepe,* the court held that in the context of a crashworthiness case, the limited introduction of seat belt evidence was proper. 33 F.3d at 744–46. There, an automobile accident victim who was unbelted at the time of the accident sued the defendant manufacturer of the vehicle, alleging that the subject Buick was defectively designed in that its sun visor/header system was unreasonably dangerous and had caused his injuries. *Id.* at 737–38. Relying on its prior opinion in *Barron,* the court held that the manufacturer's purpose for admitting evidence of a functional restraint system "was not to show that the plaintiff had himself been negligent in the hopes of diminishing his recovery in some way." *Id.* at 745–46. Instead, it was to show that the design of the vehicle was not unreasonably dangerous because it was equipped with a functional restraint system that would prevent the occupant from striking the allegedly defective sun visor/ header. *Id.* at 746.

The court in *DePaepe* reasoned that the seat belt statutes in both that case and *Barron* were "directed to the contention that a plaintiff was himself negligent in failing to utilize the vehicle's restraint system." *Id.* Thus, the statutes were "not intended to preclude evidence that a vehicle was equipped with a functional restraint system for the purpose of showing that the overall design of the vehicle was reasonably crashworthy." *Id.*

■ Such is the case here. Section 4581(e) should not be read too broadly. It "does not preclude all seat belt evidence, but only evidence of non-use in assessing whether the plaintiff[s] had been negligent in failing to mitigate the consequences of [their] accident." *Id.* at 745 (citing *Bar-*

*ron,* 965 F.2d at 199–200). Accordingly, similar to the holdings in *Barron* and *DePaepe,* we now hold that evidence of the existence of a the manual lap belts, and restraint system as a whole, is relevant for the limited purpose of proving that the design of the Protégé was reasonably crashworthy. The jury will be instructed on the limited purpose of that evidence.

■ We understand that plaintiffs will likely contest this holding on grounds that evidence of the existence of the manual lap belts will lead the jury to infer that plaintiffs were not wearing their lap belts, in violation of § 4581(e). However, given the evidence before us, particularly the evidence relating to the "posture" and "submarine phenomenon" of the front seat passengers at the time of the accident and the fact that Ana Carrasquilla caused "loading" and "increased the forces" acting on the right front seat occupant, we believe that the jury will likely reach the conclusion that plaintiffs were unbelted at the time of the accident, regardless of whether evidence of the existence of manual seat belts is admitted or not.

Defendants' motion *in limine* with respect to evidence of the existence of manual lap belts in the Protégé will be granted.

### 3. Due Process And Equal Protection Challenges

■ Preliminarily, the court points out that it is "bound by the well-settled principle that acts of state legislative bodies are presumed constitutional." *Kelly v. Ford Motor Company,* No. CIV.A. 94–2579, 1996 WL 639832, at *3 (E.D.Pa. Oct.29, 1996) (citing, *inter alia, Linmark Assoc. Inc. v. Township of Willingboro,* 535 F.2d 786, 793 (3d Cir.1976), *rev'd on other grounds,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977); *James v. Southeastern Pa. Transp. Auth.,* 505 Pa. 137, 477

A.2d 1302, 1304 (1984); *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987, 991 (1983)). Furthermore, "[t]he challenger must rebut this presumption by a 'clear, palpable, and plain demonstration that the statute violates a constitutional provision.'" *Kelly,* 1996 WL 639832, at *3 (quoting *James,* 477 A.2d at 1304)(further citation omitted). "Any uncertainty must be resolved in favor of sustaining the statue." *Kelly,* 1996 WL 639832, at *3 (citing *Milk Control Comm'n v. Battista,* 413 Pa. 652, 198 A.2d 840, 843 (1964)).

For the reasons expressed in our Memorandum # 2 of September 25, 2001, we uphold the constitutionality of § 4581(e) on due process grounds.

 Defendants hinge an equal protection claim on the argument that evidence of plaintiffs' seat belt non-use is relevant to the determination of whether defendants are tortfeasors in the first instance. Conceding to a rational basis standard of review, *see Kelly,* 1996 WL 639832, at *4, defendants argue that § 4581(e) bears no relation to the legislature's goal in the context of the instant crashworthiness case where plaintiffs assert a defect in a car's occupant restraint system (*i.e.* knee bolsters).

Absent clear direction from the Third Circuit or the Pennsylvania Supreme Court that evidence of seat belt non-use is admissible in the context of a crashworthiness case, we will not alter our ruling that § 4581(e) precludes such evidence in the instant civil action. Moreover, given our now changed position with respect to evidence of the existence of a functional restraint system in the Protégé, we cannot see how defendants' equal protection of the law is violated, in that defendants are now able to defend the crashworthiness of the vehicle. Accordingly, we find that defendants have not clearly established that

§ 4581(e) violates their right to equal protection of the law.

We uphold our finding previously that § 4581(e) passes constitutional muster under a rational basis review. Defendants' motion *in limine* will be denied with respect to their constitutional challenges to § 4581(e).

### B. Evidence Regarding The Existence Of A Defect In The Knee Bolsters

Defendants argue that plaintiffs are unable to meet their burden of proof with respect to the existence of a defect in the knee bolsters and causation of enhanced injuries. Specifically, defendants claim that "[n]one of plaintiffs' experts have described any specific defects in the knee bolsters that are not related to the preempted restraint system claims." Defendants' Brief in Support of the Mazda Defendants' Motion *in Limine* to Preclude Evidence Regarding the Existence of a Defect in the Knee Bolsters of the Subject Mazda Protégé (Defendants' Brief) (record doc. no. 481) at 2. Defendants assert further that:

> plaintiffs' experts have offered no definitive design alternatives for the knee bolsters; have not described what injuries would have occurred had an alternative knee bolster design been used; have offered no opinions regarding the extent of the enhanced injuries attributable to the allegedly defective knee bolster design; and have provided no opinions whatsoever with respect to any lack of warnings regarding the knee bolsters.

*Id.*

In stating the burden of proof for a plaintiff in a crashworthiness case, defendants cite to *Oddi v. Commonwealth of Pennsylvania; Dept. of Transp.,* 234 F.3d 136, 143 (3d Cir.2000); *Huddell v. Levin,* 537 F.2d 726, 737–38 (3d Cir.1976); and *Kupetz v. Deere & Co., Inc.,* 435 Pa.Super.

16, 644 A.2d 1213, 1218 (1994). As articulated in those cases, defendants submit that plaintiffs must establish: (1) that the design of the knee bolsters is defective; (2) that an alternative, safer design that was practical existed; (3) what injuries, if any, plaintiffs would have received had the alternative design been used; and (4) the defective design caused or exacerbated specific injuries.

■ As noted above, we will adopt the burden of proof for a plaintiff in a crashworthiness case as set forth in *Stecher*, requiring "a plaintiff to prove only that a defect was a substantial factor in producing damages over and above those which were probably caused as a result of the original impact or collision." 779 A.2d at 495.

Several of plaintiffs' experts' reports offer criticism of the knee bolsters in the Protégé.[5] For example, plaintiffs' experts' reports provide, in part, the following:

> It is clear that the knee protector of the accident vehicle was totally ineffective for the passengers whose sizes are out of AM50 percentile dummy and not wearing lap belts, examining the injury level and areas Argenix Suarez and Marco Carrasquilla sustained.

April 8, 1999 Report of Akio Takaoka, Defendants' Motion *in Limine*, Exhibit A at 2.

> During the crash pulse, Mr. Carrasquilla's pelvis was ejected forward excessively, relative to his shoulders and relative to his left front seat bottom, in the absence of industry-standard pelvic restraint—e.g., of the quality that could have been provided by a well-designed lap belt. Mr. Carrasquilla's (a) knees punched through the external plastic knee bolster, penetrated the empty spaces forward of his external knee bolster shell as his pelvis continued to eject forward relative to his seat bottom, (b) then his knees impacted dangerous, 'aggressive' steel structures, and (c) his liver was lacerated.
>
> Had Mr. Carrasquilla also been wearing his active lap belt, in this subject collision, he would neither have sustained (a) severe injuries nor (b) serious lower extremity injuries, let alone lower extremity injuries that left him so markedly disabled. On the other hand, had Mr. Carrasquilla's knee bolster design been optimized for injury prevention, Mr. Carrasquilla's lower extremity injuries would have been mitigated significantly.

February 26, 1999 Report of John B. Lenox, Defendants' Motion *in Limine*, Exhibit B at 9, 10.

> [T]he knee bolster must be specially designed to provide impact attenuation and energy absorption, otherwise it will merely result in injuries to the knees and legs, as occurred here.
>
> [T]he interior dash area at issue sustained significant damage from impacts by both the driver and front passenger, and the only slightly padded lower dashboard surface was not a true bolster, in that it was merely a plastic panel around the steering wheel column for the driver and the glove box door for the passenger, and did not utilize features such as found in the bolster designed for VW, which was several inches thick and had extensive padding as well as a 'crushable' material for energy absorption.

---

5. Defendants submit that there is no mention of the right front knee bolster in any of plaintiffs' expert reports. Given the following evidence submitted by plaintiffs, the court does not credit defendants' contention on that point, as several of the expert reports reference the knee bolster on both the driver's and passenger's side.

October 5, 2000 Report of Louis D'Aulerio, Plaintiffs' Response to Defendants' Motion *in Limine*, Exhibit 2 at ¶¶ 7,8.

It is conjectured that the 'knee protector' that was referred to in this test report was not a 'knee bolster' but a thin sheet metal part that was provided inside of the instrument panel in order to prevent a driver's knee(s) or limb(s) contacting sharp protuberant object(s) and/or key cylinder of steering column and being injured. Of course, it is needless to mention that such a part is not aimed to and/or expected to perform to limit occupant's forward movement or absorb his/her kinematic energy.

With the fact that there were numerous laceration wounds on the left knee and left leg of Mr. [sic] Argenix Suarez, it is judged that there was no such 'knee protector' on the instrument panel of the passenger side.

January 15, 2002 Report of Akio Takaoka, Plaintiffs' Response to Defendants' Motion *in Limine*, Exhibit 3 at 2.[6]

The automatic shoulder belt, when used by itself in conjunction with the knee bolster, allows the occupant to experience dangerous kinematic patterns during frontal impacts, including overloading of the chest area and submarining under the belt, which can result in fatal abdominal and spinal injuries. The fatal injuries sustained by Argenix Suarez in this accident are consistent with those expected of occupants undergoing such dangerous kinematic patterns during frontal impacts when restrained by only a diagonal shoulder belt and knee bolster.

July 30, 1998 Report of William H. Muzzy, III, Defendants' Motion *in Limine*, Exhibit E at 1–2. *See also* May 13, 1998 Report of Louis D'Aulerio, Defendants' Motion *in Limine*, Exhibit F at 3 (stating same).

■ Notably, however, there exists a problem with respect to those reports in the context of plaintiffs' non-preempted "effectiveness" claim pertaining to the knee bolsters in the Protégé. As defendants point out, it appears as though all of the experts' reports make some reference to the non-utilization of the manual lap belts as either the root cause, or significant cause, of the injuries sustained by Marco Carrasquilla and Argenix Suarez. We assume that, in providing testimony based on their reports, the experts intend to make reference to the fact that the Ana Carrasquilla was unbelted and Marco Carrasquilla and Argenix Suarez were not utilizing their manual belts at the time of the collision.

Plaintiffs point out that it is their intent to limit their experts' testimony so as to omit discussion of the lap belts. However, given our holding above, evidence of the existence of the seat belt system in the Protégé will not be excluded. What will be excluded, and stricken from any report, is any testimony referring to the fact that any or all plaintiffs were unbelted, or failed to utilize their manual lap belt, at the time of the accident. This applies with equal force to the testimony and reports of defendants' experts, as well as to plaintiffs' claims pertaining to the allegedly defective seat back and seat track.

We defer our determination of whether plaintiffs meet their burden of proof as

6. This report was is submitted as a supplemental report by plaintiffs' expert Akio Takaoka, prepared on January 15, 2002. Previous reports by Mr. Takaoka are submitted as Exhibits 23 and 24 of Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment, as well as Exhibit A to defendants' instant motion *in limine* (noted above). By order dated March 21, 2002, the court permitted the parties to present all late disclosed supplemental expert reports.

articulated in *Stecher* until the close of plaintiffs' case, but prior to submission of the issue to the jury.

Accordingly, defendants' motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters will be denied.

### III. CONCLUSION

For the foregoing reasons, we will grant plaintiffs' motion *in limine* requesting the court adopt as the burden of proof in the instant crashworthiness case the burden articulated in *Stecher*.

Defendants' motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters in the subject Protégé and to preclude application of Pennsylvania's seat belt statute as unconstitutional will be granted in part and denied in part.

On reconsideration, defendants' motion *in limine* to permit evidence of the existence of manual lap belts in the Protégé will be granted. Defendants' motion *in limine* (1) to permit evidence of plaintiffs' failure to utilize a seat belt or manual lap belt; (2) to preclude application of the Pennsylvania Occupant Protection Act as unconstitutional; and (3) to preclude evidence regarding the existence of a defect in the knee bolsters in the Protégé will be denied.

An appropriate order will issue.

### ORDER

For the reasons set forth in the accompanying memorandum,

IT IS ORDERED THAT:

1. Plaintiffs' motion *in limine* to follow the authority set forth in *Stecher v. Ford Motor Co.*, 779 A.2d 491 (Pa.Super.2001), *appeal granted by* 792 A.2d 1254, 2001 WL 1630213 (Pa. Dec.19, 2000)(TABLE, NO.

662) (record doc. no. 467, filed October 25, 2001) is granted.

2. Defendants' motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters in the Protégé and to preclude application of Pennsylvania's Occupant Protection Act as unconstitutional (record doc. no. 481, filed January 14, 2002) is granted in part and denied in part.

 2.1 Defendants' motion *in limine* to permit evidence of the existence of a restraint system, particularly manual lap belts, in the Protégé is granted.

 2.2 Defendants' motion *in limine* to permit evidence of plaintiffs' failure to utilize a seat belt or manual lap belt is denied pursuant to the Pennsylvania Occupant Protection Act, 75 Pa. Cons. Stat. Ann. § 4581(e).

 2.3 Defendants' motion *in limine* to preclude application of the Pennsylvania Occupant Protection Act as unconstitutional is denied.

 2.4 Defendants' motion *in limine* to preclude evidence regarding the existence of a defect in the knee bolsters in the Protégé is denied.

 2.5 The court defers determination of whether plaintiffs meet their burden of proof as articulated in *Stecher* until the close of plaintiffs' case, but prior to submission of the issue to the jury.

3. Jury selection is reconfirmed for May 1, 2002.

4. The clerk is directed to fax a copy of this order and attached memorandum to counsel today.